## STATE OF CONNECTICUT *v.* DAVID YEDNOCK
## (5863)

DALY, BIELUCH and FOTI, Js.

Argued February 16—decision released May 3, 1988

*John C. McBride,* pro hac vice, for the appellant (defendant).

*C. Robert Satti, Sr.,* state's attorney, with whom, on the brief, was *Irving L. Aronson,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70, injury or risk of injury to, or impairing the morals of, a child in violation of General Statutes § 53-21, and delivery of liquor to a minor in violation of General Statutes § 30-86. The defendant claims on appeal that the court erred (1) in allowing an out-of-court statement of the victim to be read to the jury in lieu of her own verbal testimony, (2) in allowing the state to proceed on the original information, (3) in denying a request for a continuance, and (4) in admitting a prior oral statement of the victim for the limited purpose of impeachment only. We find no error.

From the evidence presented, the jury could reasonably have found the following facts. The victim, who was fifteen years of age at the time of the trial and fourteen years of age at the time of the offenses, had known the defendant for some time prior to the assault and had babysat for his children several times during the eighteen months prior to the assault. In early November of 1985, the victim and a girlfriend went to the defendant's home to visit his wife. When they arrived, the defendant told them his wife was not at home but was expected to return at approximately 10:30 p.m. The girls decided to stay and visit with the defendant's children. The defendant, who was visiting with a male friend, asked the girls if they wanted some soda. He gave them soda which had something else in it. The victim subsequently saw the defendant putting vodka in a second drink which he gave to her. She had three of these drinks. A short time later, after the defend-

ant had taken a shower, he called the victim into the bedroom, kissed her and touched her breasts through her clothing.

Several nights later, the victim and her girlfriend again went to the defendant's home to visit with the defendant's wife. The defendant was the only one there. He gave the girls vodka to drink, took a shower, and went into the bedroom where he called for both girls, saying he wanted to show them something. The defendant wore only a towel. After they entered the room, the defendant closed the bedroom door and turned off the light. The victim thought he would kiss her again, so she went into the living room. She started to feel ill from drinking and was told by the defendant to go into the bedroom and lie down. After she did this, the defendant and her girlfriend came back into the bedroom; all three laid on the bed with the defendant holding both girls down. The defendant first attempted to remove the girlfriend's pants, but the defendant let the girl go after she said she had to go to the bathroom. The defendant then removed the victim's clothing, kissed her breasts and placed his finger in her vagina. She asked him a number of times to stop but he would not. He then got on top of her and succeeded in having vaginal intercourse with her. She told him he was hurting her and to stop, but he would not. A short time later, there was a knock at the front door. The defendant released the victim, got dressed and told the victim to get dressed. She went into the bathroom and discovered that she was bleeding from her vagina. Her girlfriend came into the bathroom and the victim told her that the defendant had forced her to have sex. After she arrived home that night, the victim told her sister what had happened, but did not tell her mother because she was embarrassed. In addition to telling her sister and the girlfriend who had been in the apartment with her, the victim also told two other girlfriends about

what had happened. About a month later, she told her mother and subsequently reported the assault to the police.

I

The defendant's first and principal claim is that the trial court erred in permitting the prosecution to read into evidence, for substantive purposes, a prior out-of-court statement of the victim. In particular, the defendant claims that the court erred in relying on *State* v. *Whelan,* 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986), for its conclusion that the victim's out-of-court statement was admissible for substantive purposes.

The facts relevant to this claim of error are as follows. At trial, the victim testified regarding the events prior to the actual alleged assault. When asked to describe the particulars of the assault, the victim told the court that she did not want to talk about it any more. When the court attempted to elicit testimony from her, she became agitated and started to cry. The court excused the victim and the jury, and called the victim's advocate to the stand. The advocate testified that the victim was angry, frightened and emotionally upset by the prospect of testifying about the details of the assault before the jury and the defendant. After receiving the advocate's testimony, the court concluded that the victim was under such stress that it was inappropriate to require her to give direct testimony. After recalling the victim and the jury, the prosecution was permitted to read into evidence the victim's out-of-court statement which gave the details of the alleged assault. The victim adopted the statement and testified to the events which followed the alleged assault. The defendant's counsel was then permitted to pursue an unlimited cross-examination of the victim, including examining

her on the details of the assault as it was related in her out-of-court statement.

The defendant contends that the holding in *State* v. *Whelan,* supra, is limited to the admissibility of out-of-court statements which are inconsistent with the witness' trial testimony and are otherwise shown to be reliable through cross-examination. Although we agree with the defendant that the trial court was mistaken in concluding that the proffered evidence and facts of this case were on "all fours" with *Whelan,* we cannot, however, agree that the court erred in admitting the proffered out-of-court statement under the principles articulated in that case. In addition, we note that the victim's out-of-court statement, which was read into evidence, was not admissible under the constancy of accusation exception; *State* v. *Ouellette,* 190 Conn. 84, 459 A.2d 1005 (1983); C. Tait & J. LaPlante Connecticut Evidence (2d Ed.) § 11.22; nor was it admissible as a prior inconsistent statement admissible for impeachment purposes. *State* v. *Villafane,* 171 Conn. 644, 672, 372 A.2d 82 (1976), cert. denied, 429 U.S. 1106, 97 S. Ct. 1137, 51 L. Ed. 2d 558 (1977). This case, therefore, presents issues of first impression.

In *State* v. *Whelan,* supra, our Supreme Court was asked to determine the admissibility of a prior out-of-court identification for substantive purposes. As in this case, the declarant in *Whelan* was available and took the stand. He testified, however, that he had no recollection of the assailant and could not or would not vouch for the credibility of his own out-of-court statement which identified the defendant as his assailant. The court then allowed the prior out-of-court identification into evidence for substantive purposes.

In *Whelan,* the court noted that the reason prior inconsistent out-of-court statements were not generally admissible for substantive purposes was because

the "declarant was not (1) under oath and subject to punishment for perjury, (2) in the presence of the trier of fact, or subject to cross-examination" at time the statement was made. Id., 749. These are essentially the policy reasons for excluding all hearsay testimony offered for its truth. These are also the reasons prior consistent statements are generally admissible only when accompanied by an instruction that the testimony be considered solely to evaluate the witness' credibility; *State* v. *Brown,* 187 Conn. 602, 609–10, 447 A.2d 734 (1982); and then only after the witness has testified as to the facts in the out-of-court statement.

In rejecting the orthodox view that prior inconsistent statements are not admissible for substantive purposes, the *Whelan* court reasoned that when a declarant is available for cross-examination, on the prior out-of-court statement, that cross-examination is likely to be meaningful. It is for the jury to determine whether to believe the prior statement or reject it. "Moreover, prior statements are, necessarily, made closer to the event in question, when memories are fresher and when there is less likelihood that the statement is the product of corruption, false suggestion, intimidation or appeals to sympathy. . . . Quite simply, when the declarant is in court, under oath, and subject to cross-examination before the factfinder concerning both [her] out-of-court and in-court statements, 'the usual dangers of hearsay are largely nonexistent . . . .' *California* v. *Green,* 399 U.S. 149, 155, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970)." *State* v. *Whelan,* supra, 750–51. A trial is a search for an objective account of the events upon which criminal charges are based. An evidentiary rule which requires the trial court to exclude relevant evidence the reliability of which can be tested by cross-examination serves no purpose. *State* v. *Whelan,* supra.

The *Whelan* court noted that under *California* v. *Green,* supra, the use of prior inconsistent statements

for substantive purposes does not violate the confrontation clause. *State* v. *Whelan,* supra, 751 n.6. More recently, the United States Supreme Court concluded that the use of prior consistent out-of-court identifications, offered for substantive purposes, does not offend the confrontation clause if the declarant is present at trial and subject to cross-examination. *United States* v. *Owens,* U.S. , 108 S. Ct. 838, 98 L. Ed. 2d 951 (1988). " 'The Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is moved by forgetfulness, confusion, or evasion. To the contrary, the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony.' " *Delaware* v. *Fensterer,* 474 U.S. 15, 21–22, 106 S. Ct. 292, 88 L. Ed. 2d 15 (1985), quoted in *United States* v. *Owens,* supra, 957. The confrontation clause does not guarantee the defense the cross-examination it wishes, but only an opportunity for effective cross-examination. *Delaware* v. *Fensterer,* supra.

In *United States* v. *Owens,* supra, the victim gave an out-of-court identification of his attacker. During the trial, however, he testified that he was unable to identify the defendant as his asssailant. The victim did, however, testify that he clearly remembered making the out-of-court identification which named the defendant as his assailant. The court admitted the out-of-court identification for substantive purposes, reasoning that the defense could fully cross-examine the witness and the trier could judge the witness' credibility.

In this case, the victim was able to adopt her out-of-court statement relating the details of the assault, and she was fully cross-examined on the statement itself. During her cross-examination, she corroborated

particular facts represented in the statement and rejected facts, proffered by the prosecution, which were inconsistent with her out-of-court statement. The court did not, at any time, restrain defense counsel's cross-examination. The victim's out-of-court statement in this case, complied with the safeguards established by *Whelan* for the admissibility of prior out-of-court statements for substantive purposes[1] and conforms to the requirement in *Owens* that the declarant be subject to a full cross-examination on his consistent out-of-court statement.

In concluding that the trial court did not err in admitting into evidence the victim's prior out-of-court statement, we find instructive our Supreme Court's recent decision in *State* v. *Jarzbek,* 204 Conn. 683, 529 A.2d 1245 (1987), cert. denied, U.S. , 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988). In *Jarzbek,* which was decided before the legislature enacted General Statutes § 54-86g,[2] the court concluded that the video-taped testimony of a minor, who was the victim of an alleged sexual assault, is admissible, under certain circumstances, in lieu of live testimony. The court

---

[1] The declarant's out-of-court statement was (1) written, (2) she had signed it, and (3) she had a personal knowledge of those facts when she testified and was cross-examined. *State* v. *Whelan,* 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986).

[2] General Statutes § 54-86g provides: "(a) In any criminal prosecution of an offense involving assault, sexual assault or abuse of a child twelve years of age or younger, the court may, upon motion of the attorney for any party, order that the testimony of the child be taken in a room other than the courtroom in the presence and under the supervision of the trial judge hearing the matter and be televised by closed circuit equipment in the courtroom or recorded for later showing before the court. Only the judge, the attorneys for the defendant and for the state, persons necessary to operate the equipment and any person who would contribute to the welfare and well-being of the child may be present in the room with the child during his testimony. The attorneys and the judge may question the child. The defendant may observe and hear the testimony of the child and may consult with his attorney, but the court shall ensure that the child cannot hear or see the defendant."

reasoned: "Taking as our point of departure the truth-enhancing goals of the confrontation clauses, we conclude that they should not be construed so strictly as to preclude the state, in particular circumstances, from establishing a compelling need to have a minor victim of tender years testify outside the physical presence of his or her alleged sexual assaulter. We cannot discount the possibility that such a witness might be intimidated, or for any number of reasons inhibited, by the presence of the accused. For example, a minor victim may refuse to testify or may distort his or her testimony because he or she has been threatened by the defendant or is overwhelmed by feelings of guilt." *State* v. *Jarzbek,* supra, 703. In *Jarzbek,* the court concluded that, after an evidentiary hearing where appropriate circumstances are shown to exist, the state should be permitted to substitute out-of-court testimony for live testimony.

In this case, after the victim refused to testify regarding the details of the assault, the court conducted a hearing on the victim's emotional ability to give direct testimony. After the testimony of the victim's advocate, the court concluded that it would be appropriate to admit her out-of-court statement in lieu of direct testimony. We believe that the procedure followed by the court is consistent with the conclusion that "protecting the physical and psychological well being of children is a compelling state interest." Id., 701.

Here, the victim's prior out-of-court statement (1) was written, (2) it was signed by the declarant, (3) she had personal knowledge of the facts stated in it, and (4) she was cross-examined on the particulars represented in the statement. Finally, the court conducted a hearing to determine the appropriateness of allowing the statement into evidence before admitting it in lieu of direct testimony. We believe, therefore, that the orthodox concerns about the trustworthiness of out-of-court

statements offered for their truth was overcome by the procedures followed in this case. We also conclude that the defendant's right to confront the witnesses against him was protected by these procedures.

## II

The defendant's second claim is that the trial court erred in permitting the prosecution to "amend" the information by withdrawing the charge of sexual assault in the first degree, and then reviving that charge on the day of trial. The defendant was originally charged with three counts: (1) sexual assault; (2) risk of injury; and (3) delivering alcoholic liquor to a minor. After the jury was selected, counsel conferred with the court in chambers. During the conference, the prosecution indicated that the victim was not going to testify regarding the sexual assault count. After the prosecution indicated a willingness to withdraw the sexual assault count, a discussion followed as to whether the appropriate procedure would be for the court to direct the verdict on that count or for the prosecution to file a substitute information. The court informed the prosecution that it preferred that the information be amended. The jury was then reconvened and court was adjourned until the next day. The court did not, at that time, give any instruction regarding the sexual assault count. The next morning, the prosecution informed the court that the victim was now prepared to testify about the assault and that the prosecution was prepared to proceed with the information as filed. Defense counsel objected, claiming that the assault charge had been withdrawn. The court ruled that the state could proceed on the information as it was originally filed. The jury was called and the court proceeded to swear them in.

The defendant contends that when the prosecution agreed that it would be willing to amend the information to withdraw the sexual assault count it effectively

amended the information. In support of this argument, the defendant relies on case law from Arkansas and Louisiana. Our rules of practice provide that the prosecution may amend the information by adding counts before trial begins. Practice Book § 623.[3] After commencement of trial, the prosecution may amend the information at any time before a verdict or finding, if no additional or different offense is charged. Practice Book § 624.[4] For the purpose of these rules, the trial begins at the voir dire. *State* v. *Cole,* 8 Conn. App. 545, 513 A.2d 752 (1986). The policy for prohibiting the prosecution from adding to the seriousness of the crimes charged in the information, after voir dire has begun, is to guarantee an effective voir dire and to "protect a defendant's right to fair and adequate notice of the charges against him so as to afford him an opportunity to prepare an adequate defense." Id., 550.

In this case, defense counsel conducted the voir dire assuming that the prosecution was going to prosecute the defendant on all three counts of the information. It was only after the jury was selected and counsel conferred with the court in chambers that defense counsel learned of the prosecution's intention to withdraw the sexual assault count. This conference occurred at 4 p.m. on November 24, 1986, and trial began at 11 a.m. on November 25, 1986. We conclude that the defend-

---

[3] Practice Book § 623 provides: "If the trial has not commenced, the prosecuting authority may amend the information, or add additional counts, or file a substitute information. Upon motion of the defendant, the judicial authority, in his discretion, may strike the amendment or added counts or substitute information, if the trial or the cause would be unduly delayed or the substantive rights of the defendant would be prejudiced."

[4] Practice Book § 624 provides: "After commencement of the trial for good cause shown, the judicial authority may permit the prosecuting authority to amend the information or indictment at any time before a verdict or finding if no additional or different offense is charged and no substantive rights of the defendant would be prejudiced. An amendment may charge an additional or different offense with the express consent of the defendant."

ant was not denied an opportunity to conduct an effective voir dire; Id., 551; because his voir dire was conducted on the assumption that he would be tried on the more serious charge.

We also conclude that the defendant was not denied an opportunity to prepare an adequate defense as a consequence of the nineteen-hour hiatus during which he believed the sexual assault count was being withdrawn.

## III

The defendant's third claim of error is that the trial court erred in refusing to grant the defendant's motion for a continuance to allow time for a defense witness to arrive from out of state. Prior to trial, the prosecution informed the court that its case would take approximately one day. On the basis of that representation, the court informed defense counsel that he should be prepared to begin presenting his case at 2 p.m., Tuesday, the first day of trial. The state rested at 3:45 p.m., Tuesday, at which time defense counsel informed the court that he had several witnesses ready to proceed, but one witness was coming from out of state and would not arrive until Friday. On Wednesday, the defendant had completed his case, except for the out-of-state witness, at 11:50 a.m., at which time the court adjourned until Friday at 9 a.m. On Friday, defense counsel informed the court that the witness had not arrived and that he was unable to contact the witness. At 10:20 a.m., Friday, court was reconvened and the defendant's motion for a further continuance was denied.

The granting or denial of a continuance is within the sound discretion of the court; *State* v. *Olds,* 171 Conn. 395, 402, 370 A.2d 969 (1976); and every reasonable presumption in favor of the proper exercise of that discretion must be given by a reviewing court. *State* v. *McKnight,* 191 Conn. 564, 577, 469 A.2d 397 (1983);

M. Holden & J. Daly, Connecticut Evidence § 35. That discretion should, however, be exercised so as to accomplish the ends of substantial justice. *State* v. *Battle,* 170 Conn. 469, 476, 365 A.2d 1100 (1976).

The trial court made every effort to comply with the requests of the defendant, delaying the trial for two days while the defendant allegedly arranged for the final witness' attendance at trial. Under the circumstances of this case, we can find no abuse of discretion in the court's refusal to grant the defendant's motion for a further continuance.

We note that the defendant now claims that the out-of-state witness was critical to his case. He made no offer of proof, however, upon which the trial court could conclude that the witness' testimony was central to the defense. " 'The short answer to this claim is that no offer of proof appears in the record as to the . . . content of the testimony the [defendant] sought to introduce. "Without knowing the answer that might be forthcoming we are unable to rule on this assignment of error." ' *Jacobsen* v. *Jacobsen,* 177 Conn. 259, 267, 413 A.2d 854 (1979), quoting *Johnson* v. *Newell,* 160 Conn. 269, 277, 278 A.2d 776 (1971)." *State* v. *Conrod,* 198 Conn. 592, 597, 504 A.2d 494 (1986).

## IV

The defendant's final claim is that the trial court erred in instructing the jury that an oral out-of-court statement made by the victim during an argument with the defendant's wife was admissible for the limited purpose of testing the credibility of the victim. Approximately one month after the alleged assault, the victim and the defendant's wife encountered each other in a local laundromat. An argument ensued regarding the victim's accusations about the defendant. During the argument the victim allegedly stated that the defend-

ant had "never touched" her. The defendant claims that this was an excited utterance because it was "blurted out" during the argument and was, therefore, admissible for its truth. The court disagreed and limited the statement's use to testing the credibility of the victim.

An excited or spontaneous utterance is admissible if it "(1) follows a startling occurrence, (2) relates to that occurrence, (3) is made by someone having an opportunity to observe the occurrence, and (4) is made under circumstances that indicate that it is a spontaneous utterance caused by the excitement of the declarant and that negate an opportunity for deliberation and fabrication." C. Tait & J. LaPlante, Connecticut Evidence (2d Ed.) § 11.11.a; *Johnson* v. *Newell,* 160 Conn. 269, 278-79, 278 A.2d 776 (1971). Here, the victim's statement was not about the argument with the defendant's wife but about the alleged assault which occurred more than a month before the argument. Thus, the statement does not meet either the first or second requirement for an excited utterance. Absent some other indicia of reliability, which would justify admitting the statement for substantive purposes; *State* v. *Whelan,* supra; we conclude that the statement was properly admitted as a prior inconsistent statement for the limited purpose of impeaching the credibility of the victim. See *State* v. *Reid,* 193 Conn. 646, 652, 480 A.2d 463 (1984).

There is no error.

In this opinion the other judges concurred.