# STATE OF CONNECTICUT *v.* HERBERT JOHNSON, JR.
## (5198)

BORDEN, STOUGHTON and FOTI, Js.

Argued March 4—decision released June 7, 1988

*Michael J. McClary,* with whom was *Hugh F. Keefe,* for the defendant (appellant).

*Harry Weller,* deputy assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Jack Fisher,* law student intern, for the appellee (state).

FOTI, J. The defendant appeals from a judgment of conviction, after a jury trial, of assault in the second degree in violation of General Statutes § 53a-60 (a) (2).[1]

The defendant claims on appeal (1) that his federal and state constitutional rights to assistance of counsel were denied, (2) that the court erred in taking judicial notice of a psychiatrist's objection to the presence of defense counsel during a court-ordered psychiatric evaluation of the defendant, (3) that there was insufficient evidence on the elements of the use of a dangerous instrument and intent to cause bodily injury to find him guilty of the crime charged beyond a reasonable doubt, and (4) that his federal and state rights to a fair trial were denied as a consequence of the state's failure to disclose discoverable material.

The jury could reasonably have found the following facts. The defendant, a West Haven police officer, was employed in a second job as a security officer for the Casino Restaurant and Bar in West Haven at the time of the assault. At approximately 2 a.m. on the morning of the assault, the bar's doorman began directing

[1] General Statutes § 53a-60 provides in relevant part: "(a) A person is guilty of assault in the second degree when: . . . (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

the patrons to leave because it was closing time. The victim, a patron, refused to leave and began verbally abusing the doorman. The defendant came to the doorman's assistance and the two attempted to remove the victim from the bar. Once outside, the victim became violent and began fighting with the defendant. The victim struck the defendant, knocking him to the ground and breaking the defendant's eyeglasses. Two bystanders and two off-duty West Haven police officers finally subdued the victim and placed him face down on the ground with his hands cuffed behind him. The victim asked the defendant if he could go home. The defendant told him to "shut up," shouted obscenities at him and then kicked him with substantial force in the area of the right temple and neck.[2]

The facts relevant to each of the defendant's claims of error are discussed seriatim.

I

The defendant's first claim is that his state and federal constitutional rights to assistance of counsel were violated because the court denied his motion to have counsel present during the court ordered psychiatric examinations. The facts relevant to this claim are as follows. The defendant filed a notice with the court that he intended to introduce expert testimony bearing on whether he was capable of forming the requisite mens rea to commit the crime charged. The state subsequently moved, pursuant to Practice Book § 760,[3] for

[2] The victim was subsequently transported from the bar to the West Haven police station. After being placed in his cell, he complained of pains in his arms and legs. He went into cardiac arrest and died later that morning after being transported to a hospital. It was subsequently determined that his neck had been broken. The victim's broken neck, however, was not caused by the defendant's conduct, but had occurred prior to that conduct.

[3] Practice Book § 760 provides: "In an appropriate case the judicial authority may, upon motion of the prosecuting authority, order the defendant to submit to a psychiatric examination by a psychiatrist designated for this

a court ordered psychiatric examination of the defendant. The defendant's attorney made an oral motion to be present at any court ordered examinations. The court denied the defendant's motion. At trial, the defendant objected to the admissibility of testimony offered by the state given by two psychiatrists, John Cegalis and Howard Zonana, who conducted the court ordered psychiatric examinations of the defendant. The defendant contended, at trial, that the examinations and subsequent testimony regarding the findings of those examinations violated his right against self-incrimination. The court denied the defendant's motion to exclude the testimony, concluding that Practice Book § 760 protected the defendant's right against self-incrimination because § 760 prohibits the use of any statement made during the examination to the extent that the statement bears on an issue of guilt.[4]

The defendant contends that he was denied his right to counsel under the sixth amendment to the United States constitution because the psychiatric examinations ordered by the state constituted a critical stage of the prosecution. The defendant also claims that he was denied his separate state constitutional right to counsel by these actions. We will consider these claims of error under the *Evans* bypass rule. *State* v. *Flynn,* 14 Conn. App. 10, 21-22, 539 A.2d 1005 (1988).

We first consider the defendant's claim made under the federal constitution. The sixth amendment right

purpose in the order of the court. No statement made by the defendant in the course of any examination provided for by Sec. 757, whether the examination shall be with or without the consent of the defendant, shall be admitted in evidence against the defendant on the issue of guilt in any criminal proceeding. A copy of the report of the psychiatric examination shall be furnished to the defendant within a reasonable time after the examination."

[4] In denying the motion to suppress, the court also noted that § 760 does not provide for defense counsel at such psychiatric examinations.

to counsel is implicated (1) whenever the defendant is required to make a decision requiring distinctively legal advice, or (2) where the defendant must defend himself against the direct onslaught of the prosecutor. *United States* v. *Ash,* 413 U.S. 300, 310, 93 S. Ct. 2568, 37 L. Ed. 2d 619 (1973).

Neither condition exists here. At the time the defendant decided to put his mental state in issue he was represented by counsel. His counsel was acutely aware of the likelihood that the court would order a psychiatric examination of the defendant as provided by Practice Book § 760. Prior to the examinations conducted by Zonana and Cegalis, the defendant had seen his own psychiatrist approximately eighty times. "[A]t the [court-ordered] psychiatric interview itself, [the defendant] was not confronted by the procedural system; he had no decisions in the nature of legal strategy or tactics to make . . . . " *United States* v. *Byers,* 740 F.2d 1104, 1118 (D.C. Cir. 1984). In fact, § 760 expressly protects a defendant from the use of statements made at such interviews for purposes other than evaluating competency. "No statement made by the defendant in the course of any examination provided for by Sec. 757, whether the examination shall be with or without the consent of the defendant, shall be admitted in evidence against the defendant on the issue of guilt in any criminal proceeding."

In concluding that § 760 protects the defendant's sixth amendment right to assistance of counsel, we find the reasoning of the United States Court of Appeals for the Second Circuit in *United States* v. *Baird,* 414 F.2d 700 (2d Cir. 1969), persuasive. In *Baird,* the court concluded: "Bearing in mind that the purpose of the examination was to qualify the Government's expert and furnish him with a basis for an opinion as to the accused's mental condition to which the expert could testify at the trial; that statements made to him by the

accused could not be used on the issue of guilt or innocence of committing the offenses and were to be treated only as verbal acts from which the expert's opinion was drawn; and that the accused had no privilege to refuse to answer the alienist's questions, the examination did not constitute the kind of critical stage in the proceedings at which the assistance of counsel was needed or at which counsel could make a useful contribution. In fact, the presence of a third party, such as counsel or a stenographer, at such an examination tends to destroy the effectiveness of the interview." Id., 711.

Even if the defendant's counsel were to sit in absolute silence or remain in an adjoining room, with the defendant aware of his presence, the effectiveness of the psychiatric interview could be materially impaired. An attorney's presence in a purely observational capacity without ability to advise or object has "no relationship to the Sixth Amendment's 'Assistance of Counsel.'" *United States* v. *Byers,* supra, 1120.

"Whatever the feasibility of such a practice, we can find no basis for it in the Sixth Amendment. Its only utility would be to record events (the precise questions of the psychiatrist and the precise responses to the defendant) that are otherwise difficult to reconstruct. But as [*United States* v. *Ash,* 413 U.S. 300, 93 S. Ct. 2568, 37 L. Ed. 2d 619 (1973)] made completely clear, 'lack of scientific precision and inability to reconstruct an event are not the tests' for application of the Sixth Amendment guarantee." *United States* v. *Byers,* 1120–21. We conclude, therefore, that the court-ordered examination conducted pursuant to § 760 did not implicate the sixth amendment right to counsel.

The defendant's claim that Zonana was a professional adversary for the state, making Zonana's examination a confrontation in violation of the defendant's federal and state constitutional rights to counsel, is meritless.

Here, we find the reasoning of *United States* v. *Byers,* supra, persuasive. "An examining psychiatrist is not an adversary, much less a professional one. Nor is he expert in the relevant sense—that is, expert in 'the intricacies of substantive and procedural criminal law.' *Kirby* v. *Illinois,* 406 U.S. 682, 689, 92 S. Ct. 1877, 1882, 32 L. Ed. 2d 411 (1972)." *United States* v. *Byers,* supra, 1119.

The defendant's claim that he should have had counsel present during the psychiatric interview because the psychiatrists chosen by the state were biased is also without merit. "The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.' This right is secured for defendants in state as well as federal criminal proceedings under *Pointer* v. *Texas,* 380 U.S. 400, [85 S. Ct. 1065, 13 L. Ed. 2d 923] (1965) . . . . Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness." *Davis* v. *Alaska,* 415 U.S. 308, 315–16, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974).

When the claim is that the testimony of a particular witness is defective either because of bias or loss of memory, then that defect is properly exposed by an unrestrained cross-examination of the witness. See *Delaware* v. *Fensterer,* 474 U.S. 15, 18–20, 106 S. Ct. 292, 88 L. Ed. 2d 15 (1985); *State* v. *Ortiz,* 198 Conn. 220, 224–25, 502 A.2d 400 (1985). If Zonana was biased, as the defendant claims, the defendant had ample

opportunity to expose that defect through cross-examination of Zonana at trial.

The defendant's next claim is that he was denied his state constitutional right to assistance of counsel when the court denied his motion to have counsel present during the court ordered psychiatric examinations. The defendant contends that article first, § 8, of the Connecticut constitution, which provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel . . . . " guarantees a right to counsel during court ordered psychiatric examinations.

Though our Supreme Court has concluded that we have the power to construe the Connecticut constitution to provide broader protections than those guaranteed by the federal constitution; *State* v. *Kimbro,* 197 Conn. 219, 234–35, 496 A.2d 498 (1985); such a construction is only warranted where the defendant has proffered a convincing argument that the rights afforded him by the state constitution are distinguishable from those guaranteed by the federal constitution. *State* v. *Alexander,* 197 Conn. 180, 183 n.1, 496 A.2d 486 (1985); *State* v. *Braxton,* 196 Conn. 685, 688 n.2, 495 A.2d 273 (1985); *State* v. *Perez,* 10 Conn. App. 279, 281 n.3, 523 A.2d 508, cert. denied, 203 Conn. 810, 525 A.2d 524 (1987); see also *State* v. *Gethers,* 197 Conn. 369, 497 A.2d 408 (1985).

In *Gethers,* our Supreme Court was asked to construe article first, § 8, to guarantee a criminal defendant's right to a hybrid representation which would allow the defendant both to represent himself and to have counsel represent him. In rejecting the construction proffered, the *Gethers* court first looked to the plain language of the constitution and found no basis for concluding that the state constitution provided broader protection than the federal constitution. Id., 386. We

conclude, similarly, that the plain language of article first, § 8, guarantees counsel during the actual prosecution of the case, and it is the federal constitution which has expanded that right to other stages of process. See, e.g., *United States* v. *Wade,* 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967); *Douglas* v. *California,* 372 U.S. 353, 83 S. Ct. 814, 9 L. Ed. 2d 811 (1963).

After finding no basis for the proffered construction in the express language of the constitution, the court in *Gethers* then turned its attention to the construction adopted by other states with clauses similar to article first, § 8, of the Connecticut constitution. The court rejected the proffered construction in part because it found only one state which had given a broader interpretation to that clause. *State* v. *Gethers,* supra, 387. Here, we are similarly persuaded by the lack of authority from other states supporting the construction proposed by this defendant. Thus, the defendant has failed to articulate a basis for persuading this court to conclude that article first, § 8, guarantees a right to counsel during court ordered psychiatric examinations which is distinguishable from the federal constitutional protection.

Finally, we decline to reach the defendant's claim that, because General Statutes § 54-56d provides for the presence of defense counsel at an examination conducted to determine competency of a criminal defendant to stand trial, Practice Book § 760 should be similarly construed. There is no record of this claim being raised at trial. It is not of constitutional dimension; *State* v. *Thurman,* 10 Conn. App. 302, 306–307, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987); and is, therefore, not reviewable under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973).

## II

The defendant's second claim is that he was denied his state and federal constitutional right to confront witnesses against him because the court took judicial notice of Zonana's standing objection to the presence of counsel during a court ordered psychiatric examination. After a review of the record and the defendant's brief, we are unable to find any basis for the defendant's claim that he was unable to confront Zonana, who testified at trial and was cross-examined by counsel for the defendant.

The confrontation clause does not guarantee the defendant the cross-examination he wishes. The confrontation clause is satisfied when defense is given the opportunity to expose infirmities on cross-examination. *State* v. *Yednock,* 14 Conn. App. 333, 541 A.2d 887 (1988). We are not persuaded, from the record before us, that the defendant was denied an opportunity to conduct a complete and effective cross-examination of the psychiatrist.

## III

The defendant's third claim is that the state failed to present sufficient evidence of the use of a dangerous instrument and of the occurrence of bodily injury for the jury to convict the defendant of second degree assault. We will consider these claims together as they both challenge the sufficiency of evidence.

The jury heard testimony from several witnesses who variously described the defendant's act of kicking the victim, who was lying on his stomach with the left side of his face on the ground and his hands cuffed behind his back, as a good solid kick that sounded like an arm breaking; as picking up his foot and bringing it down

on the victim's right temple, cheek and forehead; and as taking a step and kicking the victim in the head.

The defendant concedes that the jury could reasonably have found that the defendant intended to cause physical injury to the victim. The defendant contends, however, that the state failed to offer sufficient proof that the defendant's shod foot was used as a dangerous weapon.[5]

A dangerous instrument is "any instrument, article or substance which under the circumstances in which it is used . . . is capable of causing death or serious physical injury . . . ." General Statutes § 53a-3 (7); *State* v. *Frazier,* 7 Conn. App. 27, 39, 507 A.2d 509 (1986); see also *State* v. *Killenger,* 193 Conn. 48, 54 n.4, 475 A.2d 276 (1984) (flashlight used in such a way as to fall within the definition of dangerous instrument).

The defendant also claims that there was insufficient evidence for the jury to conclude that the defendant's act of kicking the victim actually caused any physical injury. In order to meet its burden, the state was required to prove that the defendant's act caused "impairment of physical condition or pain." General Statutes § 53a-3 (3). On this element of the crime charged, the jury heard evidence that the victim was conscious after being subdued and, prior to the assault, asked the defendant if he could go home. The defendant refused and then kicked the victim in the area of the temple and neck. The witnesses testified that the victim lost consciousness after he was kicked and that there was an abrasion on the victim's face consistent with the kick.

"The standard that applies when a jury verdict is challenged for insufficiency of the evidence is well set-

[5] Although the defendant makes much of the fact that the state did not put the defendant's shoe into evidence, he does not dispute the state's claim that he was wearing shoes at the time he kicked the victim in the head.

tled. The issue is whether the jury could reasonably have concluded, upon the facts established and inferences reasonably drawn therefrom, that the defendant was guilty beyond a reasonable doubt. *State* v. *Baskins,* 12 Conn. App. 313, 316, 530 A.2d 663 (1987). 'The evidence must be given a construction most favorable to sustaining the jury's verdict.' *State* v. *Carter,* 196 Conn. 36, 44, 490 A.2d 1000 (1985); see *State* v. *Monk,* 198 Conn. 430, 432, 503 A.2d 591 (1986). Every element of the crime charged must be proved, and, although it is in the province of the jury to draw logical inferences from the facts proven, they may not resort to speculation. *State* v. *Baskins,* supra." *State* v. *Robinson,* 14 Conn. App. 40, 42, 539 A.2d 606 (1988).

In reaching conclusions from the totality of the evidence presented; *State* v. *Simino,* 200 Conn. 113, 116–17, 509 A.2d 1039 (1986); the jury is permitted to apply its own experience and common sense. See *State* v. *Sullivan,* 11 Conn. App. 80, 96, 525 A.2d 1353 (1987); *State* v. *Perez,* supra, 291.

We conclude that, after hearing all of the evidence, the jury could reasonably have concluded that the defendant's act of kicking the victim with his shod foot was, under the circumstances, the use of a deadly instrument. We also conclude that the jury could reasonably have concluded that the kick inflicted by the defendant was sufficient to cause, and did in fact cause, either impairment of the victim's physical condition or pain.

## IV

The defendant also claims that he was denied his federal and state constitutional rights to a fair trial. In particular, the defendant contends that the state's failure to disclose to his attorney the fact that the court ordered psychiatric examination by Zonana had been videotaped and that the defendant had signed a con-

sent form for that videotaping, violated his federal constitutional right to a fair trial, and violated rights protected by article first, § 8, of the Connecticut constitution, and also that he was denied his right to discoverable material protected by our rules of practice and the general statutes.

In the defendant's supplemental brief, which is limited to this issue, the defendant recounts in exhaustive detail his pretrial discovery motions and argues that these motions encompass the videotape and consent form, both of which he claims constitute exculpatory evidence. It is uncontested that this material was not specifically disclosed to the defendant's counsel until after his trial and conviction. From these facts, the defendant argues that the state deliberately suppressed the videotapes and consent form in violation of *Brady* v. *Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

Although the defendant has expended considerable energy on this claim, we must conclude that it is controlled by the simple proposition that, if the defendant has personal knowledge of facts or evidence, that information is not suppressed because the state has not disclosed it to the defendant before trial. It is only if the state is in possession of evidence which is unknown to the defendant, that a claim can be made that the state suppressed the evidence. *State* v. *Perez,* 181 Conn. 299, 309, 435 A.2d 334 (1980); see also *State* v. *Simms,* 201 Conn. 395, 407, 518 A.2d 35 (1986) (state's failure to produce the psychiatric records of a witness it called was not a violation of *Brady* v. *Maryland* because the information was a matter of public record available to the defendant); *State* v. *Dolphin,* 195 Conn. 444, 455–56, 488 A.2d 812, cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84 (1985). It is undisputed that the defendant knew Zonana was videotaping the psy-

chiatric examination, and that before the examination he signed a form purporting to consent to such videotaping.

The defendant contends that the facts of this case are unique and, therefore, are not controlled by *State* v. *Perez,* 181 Conn. 299, 435 A.2d 334 (1980). We do not agree. The defendant claims that because of his impaired psychological condition, this court should not consider him to have had personal knowledge of the videotapes and consent form. Yet, at no time prior to or during trial did the defendant contest his competency to stand trial on the grounds that he was incapable of assisting in his own defense. See *State* v. *DeAngelis,* 200 Conn. 224, 227–29, 511 A.2d 310 (1986). Nor is the defendant now claiming that he was not competent to stand trial. Rather, the defendant claims that he was incompetent only with regard to his ability to inform his attorney that the videotapes and the consent form existed. If this court were to adopt a rule which permitted a defendant to claim competency to stand trial, but selective incompetency as it affected aspects of pretrial and trial proceedings which resulted in unfavorable results for the defendant, then the elaborate safeguards established to guarantee that those who stand trial are in fact competent would be meaningless. Either the defendant was competent to stand trial, in which case he could assist in his own defense, or he was incompetent. The defendant does not claim the latter. We must conclude, therefore, that he was capable of assisting in his own defense, including informing his attorney that the videotapes and consent form existed.

The defendant next claims that even if his federal constitutional rights were not violated by the state's failure to disclose the videotapes and the consent form, he has an independent right under article first, § 8, of the Connecticut constitution which was violated. The

defendant correctly points out that our Supreme Court has recognized an independent state constitutional right which guarantees the disclosure of exculpatory information held by the prosecution. *State* v. *Cohane,* 193 Conn. 474, 495 n.16, 479 A.2d 763 (1984). This independent right is similar to that protected by the federal constitution in that it guarantees the defendant access to exculpatory evidence in the exclusive possession of the state. Consistent with our conclusion that the defendant had personal knowledge of the videotapes and consent form; *State* v. *Perez,* 181 Conn. 299, 435 A.2d 334 (1980); *State* v. *Simms,* supra; we conclude that there was no violation of the defendant's state constitutional right regarding that evidence.

V

The defendant's final claim is that he was denied his discovery rights protected by the general statutes and our rules of practice. The substance of this claim presumes that Zonana, the court appointed psychiatrist, was acting as an agent for the prosecution. We conclude that the record before us is inadequate properly to dispose of this claim.[6]

The facts relevant to this claim are as follows. Zonana, the psychiatrist who conducted one of the court ordered examinations of the defendant, conducted clinical interviews with the defendant as well as a review of his medical reports. Counsel for the defendant submitted numerous discovery requests, one of which sought "[t]he substance of any oral declaration of the defendant of which written or other tangible recording has been made and which were made by the defendant, whether before or after arrest, in

[6] The defendant makes claims under Practice Book §§ 734, 737, 741, 745, 750 and 760 and under General Statutes § 54-86c. We find the substance of the defendant's claim controlled by our analysis of Practice Book §§ 750 and 760.

response to interrogatories by any person known to the defendant to be a law enforcement officer or his agent, or a prosecuting authority or his agent."

The defendant contends, and we agree, that this discovery request mirrors § 750 (2)[7] of the Practice Book. That section gives a criminal defendant a right to certain oral statements made by him to the prosecuting authority or an agent of the prosecuting authority of which written or other recordings were made. The defendant further contends that Zonana was an agent of the prosecuting authority and that this agency is evidenced by the consent form[8] signed by the defendant at the request of Zonana.

We begin our analysis with the relevant rules of practice. Practice Book §§ 758 through 760 provide for court ordered psychiatric evaluations of a criminal

---

[7] Practice Book § 750 provides: "Subject to the provisions of Sec. 784, upon written motion of the defendant the prosecuting authority shall disclose to the defendant and allow the defendant to inspect, copy or photograph any of the following items which are known to him and obtainable by him in the exercise of due diligence:

"(1) Any relevant statements made by the defendant to any law enforcement officer of this state *or his agent,* or any copies of the same;

"(2) The substance of any oral declarations of the defendant of which a written or other tangible recording has been made and which were made by the defendant, whether before or after arrest, in response to interrogatories by any person then known to the defendant to be a law enforcement officer *or his agent* or a prosecuting authority *or his agent;* or

"(3) Any relevant statements of coconspirators which the prosecuting authority intends to offer in evidence at any trial or hearing." (Emphasis added.)

[8] The consent form provided: "I understand that these recordings are being made at the request of State's Attorney Mr. Arnold Markle and will be used to prepare my case.

"I understand that part or all of these recordings may be played for officers of the court or played during courtroom proceedings."

We note that there is no claim that the consent form was an attempt to circumvent the protections provided by Practice Book § 760. Rather, the defendant's claim is that the existence of the consent form is an indicia of an agency relationship between the state and Zonana.

defendant if the defendant intends to rely on a defense of mental disease or defect. Section 760 specifically prohibits the use of any statement made during the examination by the defendant as evidence against him on the issue of guilt or innocence. This section expressly limits the use of the court ordered examination to the issue of the defendant's mental state to the extent he has put that state in issue.

Practice Book § 750 provides, as of right, for the disclosure of statements made by the defendant to any law enforcement officer of this state or his agent. Thus, the dispositive issue is whether a psychiatrist who conducts a § 760 examination can be an agent of the state.

We first consider whether a psychiatrist who conducts a court ordered psychiatric evaluation of a criminal defendant, is generally an agent of the state, thus bringing statements made during the evaluation within the purview of § 750.

Whether a layman is an agent for the state is first a question of fact. *State* v. *Alexander,* 197 Conn. 180, 185, 496 A.2d 486 (1985); see also *Thomas* v. *Cox,* 708 F.2d 132, 135 (4th Cir.), cert. denied, 464 U.S. 918, 104 S. Ct. 284, 78 L. Ed. 2d 262 (1983). This factual finding lies in the first instance with the trial court, and an appellate court must give great deference to such a finding.[9] The factual elements that the court must consider in determining whether a layman is an agent of the state were articulated in *United States* v. *Henry,* 447 U.S. 264, 100 S. Ct. 2183, 65 L. Ed. 2d 115 (1980).

---

[9] Although finding subordinate facts is not properly within the domain of an appellate court, an appellate court can make such a finding where an adequate record is preserved on appeal and the credibility of a witness is not in issue. *State* v. *Alexander,* 197 Conn. 180, 185, 496 A.2d 486 (1985). Here, there was no factual record upon which to resolve the defendant's claim because the existence of the videotapes came to light long after trial while the case was on appeal.

In *Henry,* the court found that an inmate who informed on a fellow inmate was an agent of the state (1) because the inmate witness was a paid informant who received a "contingent-fee" for the information, (2) because the defendant was in custody and under indictment at the time he incriminated himself, and (3) the statements made by the defendant were inculpatory and used by the state for purposes of convicting him. Id., 270; *State* v. *Alexander,* supra, 184. From these facts, the court in *Henry* concluded that the inmate witness was an agent of the state.

After applying the standards for agency articulated by *United States* v. *Henry,* supra, and its progeny to Practice Book §§ 750 through 760, we conclude that a psychiatrist conducting a court ordered evaluation of a criminal defendant is generally not an agent of the state. First, the psychiatrist is appointed by the court, not by the prosecuting authority. Second, the psychiatrist receives an hourly fee; thus, the psychiatrist who conducts the evaluation is paid regardless of what opinion he reaches and in spite of whether the state calls him to testify or not. Third, neither the manner nor the result of this examination are in any way within the control or influence of the state. Finally, § 760 expressly prohibits the use of any statement given to such psychiatrist for the purpose of inculpating the defendant.

Although we have concluded that a psychiatrist who conducts a court ordered evaluation of a criminal defendant is not generally an agent of the state, we also conclude that there may be factual circumstances under which a psychiatrist crosses that threshold. See *Estelle* v. *Smith,* 451 U.S. 454, 101 S. Ct. 1866, 68 L. Ed. 2d 359 (1981). We note that a psychiatrist conducting a court ordered examination will only have an agency relationship with the state when his conduct reaches the outer limits of such a relationship. See

*Thomas* v. *Cox,* supra, 137. Because this determination is fact bound and because there is an inadequate record before us upon which we can conclude whether, under the particular circumstances of this case, Zonana's relationship with the state reached those outer limits, we must remand. The record before us must be augmented by an evidentiary hearing to determine those facts that will provide the answer to whether Zonana was an agent of the state. See *State* v. *Pollitt,* 199 Conn. 399, 415, 508 A.2d 1 (1986).

In making its determination, the trial court must examine the nature of the relationship between Zonana and the state's attorney's office in this case. The court should consider, but not limit itself to, the following: Was Zonana's practice of videotaping psychiatric examinations universal or unique to this case? Did the state's attorney expressly ask Zonana to videotape the examination of this defendant? Was the consent form in Zonana's possession or in the state's attorney's possession? In whose possession were the videotapes? Did Zonana conduct similar examinations for defendants, or did he have an exclusive relationship with the state's attorney? From these facts and other relevant evidence, the court must determine whether Zonana was an agent of the state in this case.

The supervision of this case on appeal shall remain in the appellate court. Practice Book §§ 2000, 4183; *State* v. *Pollitt,* supra, 415; *State* v. *Gonzales,* 186 Conn. 426, 436, 441 A.2d 852 (1982). If the trial court finds that the psychiatrist was not acting as an agent for the state this court will, in its supervisory capacity, dispose of this appeal based on those findings and conclusions. *State* v. *Pollitt,* supra, 416.

If, however, the court finds that Zonana was acting as an agent of the state then the trial court must set out findings of fact and conclusions of law which resolve

the defendant's claim that the contents of the video-
tapes and the consent form would have aided materi-
ally in the defendant's cross-examination of Zonana.
These latter findings, if necessary, should include an
analysis of the prejudice, if any, suffered by the defend-
ant as a consequence of not having access to the video-
tapes and consent form.

In remanding for the limited purpose set out in this
opinion "[w]e do not think that this court can or should
vacate the defendant's conviction at this time and order
a new trial because the defendant's rights are fully pro-
tected by our remand to the trial court with the direc-
tion to hold an evidentiary hearing." Id.

Finally, we have considered the defendant's claim
that the "suppression" of the videotape and consent
form bolsters his claim that the court ordered exami-
nation with Zonana was an uncounselled confrontation
with a professional adversary in violation of his fed-
eral sixth amendment and state constitutional rights
to counsel, and find that even if Zonana was an agent
for the state for the purpose of § 750 this does not affect
our conclusion that he was not a professional adver-
sary.

This case is remanded for further proceedings in
accordance with this opinion.

In this opinion the other judges concurred.