******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

SHELDON, J., concurring in part and dissenting in part. I agree with the majority's conclusion that the court erred in denying the motion to suppress filed by the defendant, Liam M., and thus that his conviction for disorderly conduct must be reversed and remanded for a new trial. However, I respectfully disagree with the majority's determination that the evidence presented at trial was sufficient to support the defendant's conviction for assault in the second degree. More specifically, I do not agree that the evidence was sufficient to prove that the plastic polyvinyl chloride (PVC) pipe[1] used by the defendant to strike the complainant was a dangerous instrument, because the pipe was not shown to be capable, when used as the defendant allegedly used it—to swing once at the complainant with sufficient force to cause a bruise on her hip—of causing death or serious physical injury.

A " '[d]angerous instrument' " is defined by statute as "any instrument, article or substance which, under the circumstances in which it is used or attempted or threatened to be used, is capable of causing death or serious physical injury . . . ." General Statutes § 53a-3 (7). " 'Serious physical injury,' " in turn, is defined as "physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ . . . ." General Statutes § 53a-3 (4). Serious physical injury is not merely an aggravated form of pain. See *State* v. *Milum*, 197 Conn. 602, 619, 500 A.2d 555 (1985) (pain is not concept embodied in statutory definition of serious physical injury).

In light of the foregoing definitions, a fact finder called upon to determine if an object used to inflict physical injury upon a victim was a dangerous instrument must evaluate its particular injury causing potential in the "circumstances in which it [was] *actually used* . . . ." (Emphasis added; internal quotation marks omitted.) *State* v. *Leandry*, 161 Conn. App. 379, 389, 127 A.3d 1115, cert. denied, 320 Conn. 912, 128 A.3d 955 (2015). Our case law reveals that such an evaluation appropriately involves consideration of several interrelated factors, including: the physical characteristics of the alleged dangerous instrument, as they relate to the object's potential to cause serious physical injury when used as the defendant actually used it; the manner in which the alleged dangerous instrument was actually used by the defendant to injure the victim, including the force and frequency of its use and the parts of the victim's body against which it was used; and the victim's special vulnerability, if any, to serious physical injury when an object with such physical char-

acteristics is used as the defendant actually used it to inflict physical injury upon her. See, e.g., id., 390 (hypodermic syringe that was potentially contaminated with blood-borne pathogen constituted dangerous instrument when used to stab victim); *State* v. *McColl*, 74 Conn. App. 545, 557, 813 A.2d 107 (" 'feet and foot-wear' " were dangerous instrument when used to kick victim because of size of defendant, age and health condition of victim, location of kicking on victim's body, and number and force of kicks, as intensified by weight of footwear), cert. denied, 262 Conn. 953, 878 A.2d 782 (2003); *State* v. *Vuley*, 15 Conn. App. 586, 588–89, 545 A.2d 1157 (1988) (hard object used to strike victim several times on head was dangerous instrument because when used, it felt like "solid piece" and "pipe," and such use resulted in loss of victim's sight for several moments, hematoma and lacerated scalp that required seven stitches to close [internal quotation marks omitted]); *State* v. *Johnson*, 14 Conn. App. 586, 595–96, 543 A.2d 740 (shod foot held to be dangerous instrument where defendant's act of kicking victim with it, while victim was lying on his stomach with left side of his face on ground and hands cuffed behind his back, was variously described as "a good solid kick that sounded like an arm breaking . . . picking up his foot and bringing it down on the victim's right temple, cheek and forehead; and as taking a step and kicking the victim in the head"), cert. denied, 209 Conn. 804, 548 A.2d 440 (1988); *State* v. *Frazier*, 7 Conn. App. 27, 39–40, 507 A.2d 509 (1986) (key was dangerous instrument when used to inflict abrasions and lacerations to victim's neck and face, where medical testimony was presented as to potential for serious injury to victim's blood vessels, larynx and trachea to result from such attack); *State* v. *Levine*, 39 Conn. Supp. 494, 498, 466 A.2d 814 (1983) (hose and nozzle used "in a whip-like fashion" to strike victim on head held to be dangerous instrument).

In this case, the jury received very little evidence about the physical characteristics of the plastic PVC pipe the defendant used to strike the complainant's hip. The pipe was not seized by investigating police officers, nor was it otherwise produced and admitted into evidence. Thus, although a police photograph of the pipe at the scene of the assault was introduced, from which its external dimensions could be viewed and estimated by comparing them to those of other objects depicted in the photograph, no evidence was presented as to its other, potentially more significant injury producing characteristics, such as its weight or its density.

Nor was any evidence presented as to the "circumstances in which [the pipe was] actually used"; *State* v. *Leandry*, supra, 161 Conn. App. 389; apart from testimony that it was swung once, not repeatedly, striking the complainant's buttocks with sufficient force to cause a bruise where it struck her hip. There was, it must be added, no evidence that the defendant threat-

ened to use the pipe in any manner, or that he attempted to use it in some way other than swinging it in such a manner as to strike and cause a bruise on the complainant's hip. Thus, for example, the evidence did not show that he swung the pipe at the complainant more than once; or that he swung it at or near a different part of her body, where it might have caused more serious harm than a bruise; or that he swung it at her wildly, in such a manner as to make possible the striking of a different, more sensitive or vulnerable part of her body, thus potentially causing a serious physical injury. Furthermore, apart from a photograph of the bruise on the complainant's hip that resulted from that single swing, there was no evidence as to the amount of force with which the plastic PVC pipe was used to strike her. Of course, it is possible to imagine other scenarios in which the use of a PVC pipe might be shown capable of causing serious physical injury, such as a single blow to the eyes, nose or ears that might be shown capable of causing serious disfigurement, or multiple blows to other, more vulnerable or sensitive body parts, such as the head, the genitals or the abdomen, that might be shown capable of causing serious loss or impairment of the function of a bodily organ. However, the theoretical existence of other possible uses of a PVC pipe that could have caused the complainant serious physical injury, thus supporting a finding that the PVC pipe is a dangerous instrument, provides no basis for making such a finding in this case, where the evidence does not show that the defendant actually engaged in any such conduct.

The complainant, of course, did not actually sustain a serious physical injury. Although the actual infliction of serious physical injury is not required to prove that an object used to inflict injury was a dangerous instrument, the lack of such an injury in this case obviously deprived the jury of any basis for inferring the pipe's injury producing potential from the injury alone. The state did not present any medical testimony as to the potential injurious consequences of striking the average person with a plastic PVC pipe of the type here used, much less the particular susceptibility of this complainant to suffering serious physical injury when struck once in the buttocks with such a pipe, as she was. See, e.g., *State* v. *McColl*, supra, 74 Conn. App. 556 (in determining whether " 'feet and footwear' " were dangerous instrument, this court considered vulnerability of victim, who was seventy-one years old and had heart condition, and medical testimony presented that part of body that defendant repeatedly kicked contains several vital organs, including lungs and kidneys, as to which older person, when kicked repeatedly, could suffer serious internal injuries or death). Other than having the opportunity to observe both the complainant and the defendant when they testified, and to see the complainant's bruise in the photograph that was admit-

ted into evidence, the jury had no basis for inferring the ultimate potential of the pipe to cause her serious physical injury when used as the defendant used it here.

In conclusion, our law concerning dangerous instruments is clear that an "object's potential for injury . . . must be examined only in conjunction with the circumstances in which it is actually used or threatened to be used, and not merely viewed in terms of its dangerous capabilities in the abstract." (Internal quotation marks omitted.) *State* v. *Leandry*, supra, 161 Conn. App. 389. Here, at most, the jury could have found that the defendant swung a plastic PVC pipe at the complainant once, striking her in the buttocks and causing a bruise to her hip. I do not believe that such evidence was sufficient to support the jury's finding, as required for a conviction of assault in the second degree, that the PVC pipe the defendant used to strike the complainant was, as used, a dangerous instrument.

On the basis of the foregoing, I would reverse the defendant's conviction for assault in the second degree, and remand this case to the trial court with direction to render a judgment of acquittal on that charge and to afford the defendant a new trial on the charges of disorderly conduct, as the majority hereby orders, and on the lesser included offense of assault in the third degree, on which a judgment of conviction would otherwise enter, in the absence of other trial error, upon the defendant's acquittal of assault in the second degree.

[1] Although the defendant described the PVC pipe at one point as a " 'metal tube,' " the state consistently at trial represented that the PVC pipe was plastic. In addition to the testimony of Officer Gaspar of the North Haven Police Department that the PVC pipe was plastic, the state's attorney told the jury during closing argument that "PVC piping is a hard plastic used often times in plumbing." Although the defendant's single description of the pipe as a " 'metal tube' " may reveal the defendant's perception of the heft or rigidity of the pipe, the record is bereft of any actual description of the weight of the pipe.