STATE OF CONNECTICUT *v.* TIMOTHY FAIR
(11457)

PETERS, C. J., HEALEY, SHEA, DANNEHY and SANTANIELLO, Js.

Argued June 7—decision released August 6, 1985

*Robert F. McWeeny,* for the appellant (defendant).

*Donald A. Browne,* state's attorney, with whom, on the brief, was *Dominick J. Galluzzo,* assistant state's attorney, for the appellee (state).

PETERS, C. J. The issues on this appeal concern the propriety of psychiatric testimony offered by the state to rebut a defense of extreme emotional disturbance. After a jury trial, the defendant, Timothy Fair, was found guilty of murder in violation of General Statutes § 53a-54a (a) and of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2). He appeals from this judgment.

Neither party disputes the facts material to the murder conviction.[1] The defendant and the victim lived together from June, 1979, until December, 1980. The couple had a son in April, 1980. On December 26, 1980, the victim left the defendant, taking the child with her. She notified the defendant on December 28 that she intended to move to Boston and that he would never see their son again. On the morning of December 29,

---

[1] The defendant does not raise any claims of error concerning his conviction of robbery.

the defendant went to the victim's place of employment and shot her in the head. She died several days later.

At trial, the defendant claimed that he had shot the victim while suffering from an extreme emotional disturbance caused by his fear that he would never again see his son. Extreme emotional disturbance operates as a partial affirmative defense to murder. One who kills while under the influence of an extreme emotional disturbance cannot be convicted of murder but can be found guilty of manslaughter.[2]

Upon learning that the defendant intended to rely on this defense, the state moved that the court order the defendant to undergo psychiatric examination by a court-appointed psychiatrist. Over the defendant's objection, the court granted the motion and appointed Dr. John Young to examine the defendant. Young interviewed the defendant twice and, with the defendant's permission, reviewed his medical records. The state allowed Young to examine its file on the defendant. The contents of this file included a presentence investigation report that a probation officer had prepared in conjunction with a prior conviction of the defendant. Young studied the report and spoke with its author. At trial, the defendant presented only lay testimony in support of his claim of extreme emotional disturbance. In rebut-

---

[2] "[General Statutes] Sec. 53a-54a. MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

tal, Young testified that the defendant had not been suffering from an extreme emotional disturbance when he shot the victim.

The defendant raises two issues on appeal: (1) that the trial court unconstitutionally forced him to submit to psychiatric examination; and (2) that the state improperly allowed the court-appointed psychiatrist to read a confidential presentence report.

I

The defendant claims that the compelled psychiatric examination he underwent violated his privilege against self-incrimination. We disagree.

The constitutionality of a compulsory psychiatric examination depends upon whether the defendant has placed his mental status in issue. The fifth amendment to the United States constitution and article first, § 8, of the Connecticut constitution ordinarily protect "an accused against compulsory submission to psychiatric examination." *State* v. *Lovelace,* 191 Conn. 545, 550, 469 A.2d 391 (1983), cert. denied, 465 U.S. 1107, 104 S. Ct. 1613, 80 L. Ed. 2d 142 (1984), citing *Estelle* v. *Smith,* 451 U.S. 454, 468, 101 S. Ct. 1866, 68 L. Ed. 2d 359 (1981). A criminal defendant waives this privilege, however, when he places his mental status in issue. "[T]he defendant may decide whether to raise the issue of his mental state but if he chooses to do so he exposes his mental processes to reasonable examination by the state." *State* v. *Lovelace,* supra, 551–52.

We recognized in *Lovelace* that a defendant who claims extreme emotional disturbance places his mental status in issue. Extreme emotional disturbance is a defense whose establishment turns upon the factfinder's characterization of the defendant's psychological condition without regard to any specific element of the crime to which the defense applies. To prove that

he acted under the influence of an extreme emotional disturbance, the defendant must show, by a fair preponderance of evidence, that: "(a) the emotional disturbance is not a mental disease or defect that rises to the level of insanity as defined by the penal code; (b) the defendant was exposed to an extremely unusual and overwhelming state, that is, not mere annoyance or unhappiness; and (c) the defendant had an extreme emotional reaction to it, as a result of which there was a loss of self-control, and reason was overborne by extreme intense feelings, such as passion, anger, distress, grief, excessive agitation or other similar emotions. Consideration is given to whether the intensity of these feelings was such that his usual intellectual controls failed and the normal rational thinking for that individual no longer prevailed at the time of the act." *State v. Zdanis,* 182 Conn. 388, 390–91, 438 A.2d 696 (1980), cert. denied, 450 U.S. 1003, 101 S. Ct. 1715, 68 L. Ed. 2d 207 (1981); see also *State v. D'Antuono,* 186 Conn. 414, 441 A.2d 846 (1982); *State v. Elliott,* 177 Conn. 1, 9–10, 411 A.2d 3 (1979).[3]

*Lovelace* strikes a balance between the legitimate needs of the state and the cognizable rights of the defendant. On the one hand, without access to a psychiatric report, the state cannot respond intelligently to defenses that concern a defendant's mental status. On the other hand, the state's use of information obtained by court-appointed psychiatrists is not unlimited. The state may not rely on statements made by the defendant during a compulsory psychiatric examination to meet its affirmative burden of proving

---

[3] A defendant, by merely contesting the intent element of a charged crime, does not ordinarily put his mental status in issue and may not be subjected to a court-ordered psychiatric examination. Of course, a defendant may choose to offer relevant evidence derived from a psychiatric examination where intent is an issue. See *State v. Burge,* 195 Conn. 232, 240, 487 A.2d 532 (1985); *State v. Hines,* 187 Conn. 199, 204, 445 A.2d 314 (1982); see also Practice Book § 760.

the defendant's guilt in any criminal proceeding. Practice Book § 760;[4] cf. *United States* v. *Cohen,* 530 F.2d 43, 47–48 (5th Cir. 1976); *Lee* v. *County Court of Erie County,* 27 N.Y.2d 432, 267 N.E.2d 452, 318 N.Y.S.2d 705 (1971).

The defendant contends that he did not put his mental status in issue because he never presented expert psychiatric testimony in support of his defense. This argument reads *Lovelace* too narrowly. In *Lovelace,* we did note that a psychiatrist had testified on behalf of the defendant. *State* v. *Lovelace,* supra, 550–51. We did not thereby establish the defendant's presentation of his own psychiatrist as a precondition to his waiver of his privilege against compelled psychiatric examination. It would be anomalous to hold that a defendant can put his mental status in issue only through expert testimony when he can also meet his burden of proof on the issue of extreme emotional disturbance simply by offering his own testimony or the testimony of lay witnesses. Any defendant who asserts the defense of extreme emotional disturbance, whether or not he resorts to offering psychiatric testimony, raises the issue of his mental status and hence relinquishes his privilege against submitting to court-ordered psychiatric examination.

By informing the court of his intention to employ the extreme emotional disturbance defense and by present-

---

[4] "[Practice Book] Sec. 760. —— ——PSYCHIATRIC EXAMINATION

"In an appropriate case the judicial authority may, upon motion of the prosecuting authority, order the defendant to submit to a psychiatric examination by a psychiatrist designated for this purpose in the order of the court. No statement made by the defendant in the course of any examination provided for by Sec. 757, whether the examination shall be with or without the consent of the defendant, shall be admitted in evidence against the defendant on the issue of guilt in any criminal proceeding. A copy of the report of the psychiatric examination shall be furnished to the defendant within a reasonable time after the examination."

ing evidence in support of that defense, the defendant in this case did place his mental status in issue. The trial court properly directed him to submit to psychiatric examination.

## II

On his second claim of error, the defendant urges us to hold inadmissible the testimony of John Young, the court-appointed psychiatrist, because the state allowed him to read a presentence report concerning the defendant, in violation of Practice Book § 917. While we do not approve of the state's conduct in permitting the psychiatrist to have the report, we conclude that the defendant has failed to establish that the psychiatrist's access to the report constitutes reversible error.

Practice Book § 917[5] protects convicted criminal offenders from public disclosure of the contents of their

[5] "[Practice Book] Sec. 917. ⸺ ⸺USE

"The presentence investigation report shall not be a public record and shall not be accessible to the public. It shall be available initially to the parties designated in Sec. 915 for use in the sentencing hearing and in any subsequent proceedings wherein the same conviction may be involved, and it shall be available at all times to the following:

"(1) The department of adult probation;

"(2) The correctional or mental health institution to which the defendant is committed or may be committed;

"(3) The board of parole;

"(4) The board of pardons;

"(5) The sentence review division of the superior court;

"(6) The judicial review council;

"(7) Any court of proper jurisdiction where it is relevant to any proceeding before such court. Such court may also order that the report be made available to counsel for the parties for the purpose of such proceeding;

"(8) Counsel for the defendant and the prosecuting authority during negotiations relating to other offenses pending against the defendant or subsequently charged against him; and

"(9) Counsel for the defendant in a sentence review hearing or habeas corpus proceeding upon counsel's request to the department of adult probation; and

"(10) Any other person or agency specified by statute."

presentence investigation reports. Presentence investigation reports serve to assist courts in setting appropriate sentences and to help corrections officials make informed decisions with respect to convicted offenders. *Steadwell* v. *Warden,* 186 Conn. 153, 159, 439 A.2d 1078 (1982). Reports typically discuss "the circumstances of the offens[e] [in question], the attitude of the victim or his immediate family, the criminal record, social history and present condition of the defendant, and, if desirable, the mental and physical state of the defendant." Id., 158–59; see General Statutes § 54-91a; Practice Book § 911. Because presentence reports contain personal, and possibly embarrassing, information about the defendant, Practice Book § 917 limits access to them. Only the sentencing judge, parties to the sentencing hearing, certain corrections officers, courts in subsequent proceedings where the report is relevant, and, if the court so orders, counsel at the subsequent proceeding may have copies of the presentence report. Section 917 makes no provision for the release of the presentence report to court-appointed expert witnesses. By giving Young a copy of the defendant's prior presentence report, the state violated § 917.

The Practice Book sets forth no remedy for violations of § 917.[6] The defendant argues that the admission of testimony tainted by exposure to a presentence report compels reversal. The state contends that the psychiatrist's testimony was admissible because expert witnesses may consider inadmissible evidence in preparing their testimony. See *State* v. *Cuvelier,* 175 Conn. 100, 107–108, 394 A.2d 185 (1978). The few courts in other jurisdictions that have considered this question vary in their sensitivity to a witness's use of a presentence

[6] The lack of a sanction in Practice Book § 917 is of course no obstacle to appropriate corrective action by a court, sua sponte or on motion, to exclude or strike testimony impermissibly derived from a presentence investigation report.

report. See, e.g., *People* v. *Beasley,* 687 P.2d 1323 (Colo. App. 1984); *Oney* v. *State,* 446 A.2d 389 (Del. 1982); *Warren* v. *United States,* 436 A.2d 821 (D.C. App. 1981).

We decide today that testimony derived from improper access to presentence reports is inadmissible. The question that remains is whether the improper admission of such evidence constitutes reversible error. This is a question that is best resolved on a case-by-case basis, weighing the degree of impropriety of use and the prejudice that results to the defendant. In conducting such an inquiry, we must measure harm to the defendant in light of the purposes served by § 917 and the consequences of the specific violation. The restrictions imposed by § 917, which have the force of statute, are primarily meant to protect an offender from public disclosure of private information. In addition, a defendant may be hard presssed to conduct an effective cross-examination of an expert witness who draws adverse inferences from mixed sources, some of which were improperly consulted. On either ground, because the unauthorized use of a presentence report is not of constitutional dimension, the defendant bears the burden of establishing resulting harm. See *State* v. *Myers,* 193 Conn. 457, 469 n.7, 479 A.2d 199 (1984); *State* v. *Anonymous (83–FG),* 190 Conn. 715, 735, 463 A.2d 533 (1983); *State* v. *Gonzales,* 186 Conn. 426, 436 n.8, 441 A.2d 852 (1982); *State* v. *Januszewski,* 182 Conn. 142, 174, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981).

In this case, the defendant has failed to prove that the psychiatrist's improper access to the presentence report was harmful. At trial, before Young testified, the defendant was informed of Young's access to the report. The defendant has not attempted to show that, but for his exposure to the report, Young would have

rendered an opinion more favorable to the defendant. In preparing his opinion, Young relied on a number of resources. Nothing in the record indicates that Young's review of the presentence report did any more than reinforce conclusions that he had already drawn from other sources, and he was never asked what weight he had given to the presentence report in arriving at his professional opinion. Nor does the record support attaching prejudicial impact to Young's allusion to the presentence report in his testimony to the jury, since information about the defendant's criminal record had already been supplied to the jury upon the defendant's cross-examination, in which he admitted a number of prior convictions. Moreover, Young's access to the report did not result in its publication. The record shows that Young discussed the report with only one other person—the author of the report—and did not, in the course of his testimony, discuss any specific information contained in the report.

Because the psychiatrist's access to the report resulted in no demonstrated prejudice, we find no reversible error. Nevertheless, we admonish the state and all others to whom presentence investigation reports are properly available to guard against the unauthorized release of such reports in the future.

There is no error.

In this opinion the other judges concurred.