STATE OF CONNECTICUT *v.* RUSSELL F. MANFREDI
(5693)

DUPONT, C. J., SPALLONE and FOTI, Js.

Argued November 7, 1988—decision released March 7, 1989

*Charles D. Ray* and *Ramona Stilley Carlow,* certified legal interns, with whom were *Michael R. Sheldon* and, on the brief, *Todd D. Fernow, Timothy H. Everett* and *John T. Carey,* certified legal intern, for the appellant (defendant).

*Harry Weller,* deputy assistant state's attorney, with whom were *Herbert Appleton,* assistant state's attorney, and, on the brief, *John M. Bailey,* state's attorney, and *Pamela Weidman,* law student intern, for the appellee (state).

DUPONT, C. J. The defendant appeals from the judgment of conviction, following a jury trial, of manslaughter in the first degree, in violation of General Statutes

§ 53a-55 (a) (2).[1] The defendant claims that the trial court erred (1) in compelling him to submit to a series of pretrial psychiatric examinations, (2) in instructing the jury that they could use defense and prosecution expert testimony to find that he possessed the requisite intent to commit murder, (3) in denying his request to have his counsel present at the court ordered psychiatric examinations, and (4) in denying his request to have the court ordered psychiatric examinations recorded. We find no reversible error.

The facts are virtually undisputed. Shortly after 6 a.m. on March 8, 1985, a 1979 Oldsmobile registered to the defendant's wife was found to have crashed into a utility pole in West Hartford. Officers of the West Hartford police department found the body of the defendant's wife's on the front floor of the car, with her arms twisted unnaturally and several gashes on the right rear of her head. The police department undertook a day long investigation, studying the car and the West Hartford home of the defendant and his wife, where both had resided with their three young sons. As part of that investigation, photographs were taken of the car and portions of the defendant's home, including the garage and master bedroom. The defendant was questioned by the police, an autopsy was performed, and later that evening the home was searched pursuant to a warrant. Several hours later, the defendant was arrested on a warrant charging him with the murder

---

[1] General Statutes § 53a-55 provides in pertinent part: "(a) A person is guilty of manslaughter in the first degree when: . . . (2) with intent to cause the death of another person, he causes the death of such person or of a third person under circumstances which do not constitute murder because he committed the proscribed act or acts under the influence of extreme emotional disturbance, as provided in subsection (a) of section 53a-54a, except that the fact that homicide was committed under the influence of extreme emotional disturbance constitutes a mitigating circumstance reducing murder to manslaughter in the first degree and need not be proved in any prosecution initiated under this subsection . . . ."

of his wife. After a trial the jury returned a verdict of guilty of manslaughter in the first degree pursuant to General Statutes § 53a-55 (a) (2). The defendant was sentenced to twenty years imprisonment. Other facts relevant to the issues in this appeal will be discussed below.

I

The defendant first claims that the trial court erred in compelling him to submit to a series of pretrial psychiatric examinations conducted pursuant to Practice Book § 760,[2] in violation of his federal constitutional privilege against self-incrimination, as guaranteed by the fifth amendment to the United States constitution and made applicable to the states through the due process clause of the fourteenth amendment; *Malloy* v. *Hogan*, 378 U.S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d 359 (1981); and his privilege against self-incrimination contained in article first, § 8, of the constitution of Connecticut. The following facts are relevant to this claim. On March 11, 1985, the defendant was arraigned before the court, *Doyle, J.* The defendant was advised of his *Miranda* rights,[3] bond was set at $150,000, and the defendant was ordered, over his objection, not to see or communicate with his children until further court review. On March 13, 1985, a further hearing on bond was held before the court, *Purtill, J.* In support of his plan for the posting of bond, which called in part for the defendant's temporary hospitalization upon his

---

[2] Practice Book § 760 provides in pertinent part: "In an appropriate case the judicial authority may, upon motion of the prosecuting authority, order the defendant to submit to a psychiatric examination by a psychiatrist designated for this purpose in the order of the court. No statement made by the defendant in the course of any examination provided for by Sec. 757, whether the examination shall be with or without the consent of the defendant, shall be admitted in evidence against the defendant on the issue of guilt in any criminal proceeding."

[3] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

release, the defendant presented the testimony of psychiatrist Walter Borden. Borden, who had briefly visited the defendant two days before, testified that the defendant was "in a state of confusion, emotional confusion, depression, grief, [and] shock." On that basis, he concluded that even though the defendant did not present a danger to himself or others and was not likely to flee the jurisdiction if released, "he should be in a psychiatric hospital for a relatively short period of time." When questioned by the court, Borden confirmed that the defendant was in need of temporary hospitalization "given his state of mind right now." Accepting Borden's conclusion that "at the present time [the defendant] has . . . problems [for which] he should be in some type of institution, where he can be treated," the court ordered that, as a condition of his bond, the defendant was to enter a hospital and remain there for as long as his treating physician required. The next day, the bond arrangements were finalized. The order regarding the defendant's hospitalization was continued and clarified to include a requirement that the defendant could not leave the hospital without notifying the court.

On March 26, 1985, the state moved the court, *E. Y. O'Connell, J.,* for a psychiatric examination of the defendant under Practice Book § 760 and for an order under Practice Book § 667[4] seeking a continuance of the court's prior order prohibiting the defendant from seeing or communicating with his children. The defendant simultaneously moved for permission to see his children. The hearing also involved the bond condition requiring the defendant to report to the court before

---

[4] Practice Book § 667 provides in pertinent part: "Upon a showing that there exists a danger that the defendant . . . will seek to intimidate witnesses . . . the judicial authority, upon the defendant's release, may enter an order that he do one or more of the following: . . .

"(2) Comply with specified restrictions on his . . . association . . . ."

his release from the hospital. At the hearing on these motions, the state argued that this was "an appropriate case" under Practice Book § 760 for a psychiatric examination because the defendant might later rely upon the defenses of extreme emotional disturbance or insanity. See Practice Book §§ 758 and 759.[5] Citing the defendant's hospitalization as evidence of this possibility, the state claimed that an examination should be conducted "as soon as possible" to "protect the state's interest." Having just been given the state's motion, defense counsel stated that he was not prepared to address it. Expressing concern as to the parameters and purpose of any examination, the defendant argued that Practice Book § 760 was not applicable to the case as no decision had yet been made concerning possible defenses.

---

[5] Practice Book § 758 provides: "[DISCLOSURE BY THE DEFENDANT—DEFENSE OF MENTAL DISEASE OR DEFECT]— —NOTICE BY DEFENDANT

"If a defendant intends to rely upon the defense of mental disease or defect at the time of the alleged crime, he shall, within the time provided for the filing of pretrial motions pursuant to Sec. 811 or at such later time as the judicial authority may direct, notify the prosecuting authority in writing of such intention and file a copy of such notice with the clerk. If there is a failure to comply with the requirements of this section, mental disease or defect may not be raised as a defense. The judicial authority may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other order as may be appropriate."

Practice Book § 759 provides: "[DISCLOSURE BY THE DEFENDANT—DEFENSE OF MENTAL DISEASE OR DEFECT]— —MENTAL DISEASE OR DEFECT INCONSISTENT WITH THE MENTAL ELEMENT REQUIRED FOR THE OFFENSE CHARGED

"If a defendant intends to introduce expert testimony relating to a mental disease or defect, or another condition bearing upon the issue of whether he had the mental state required for the offense charged, he shall, within the time provided for the filing of pretrial motions or at such later time as the judicial authority may direct, notify the prosecuting authority in writing of such intention and file a copy of such notice with the clerk. He shall also furnish the prosecuting authority with copies of reports of physical or mental examinations of the defendant made in connection with the offense charged, within five days after receipt thereof. The judicial authority may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other order as may be appropriate."

The court stated that it would like to have "the benefit of the psychiatric examination in passing on" the defendant's motion to see his children, and the state's motion under Practice Book § 667. In support of his motion to see his children, the defendant had submitted letters from Borden[6] and psychiatrist Bruce Greyson. The state opposed the defendant's motion, relying on Practice Book § 667, on a tape recording of an interview with the children, and on the fact that the defendant was currently being "treated by two psychiatrists." Observing that the defendant's hospitalization and the reports submitted by the defendant "may impinge" upon its determination of the motions before the court, the court granted the state's motion for a psychiatric examination of the defendant over his objection. The only specification in the court's order was that the examination be conducted by psychiatrist Peter Zeman, if he was available. The court, after viewing the taped interview with the defendant's children, granted the state's § 667 motion and denied the defendant's motion for permission to see his children on the ground that contact with the children "could cause confusion or otherwise be a disturbing influence to the children, which would interfere with the orderly administration of justice."

On March 27, 1985, the defendant moved for a protective order concerning the upcoming court ordered examination. Alleging that his constitutional rights would otherwise be violated, the defendant requested (1) that no examinations be conducted without the presence of counsel, (2) that the examinations be limited to matters concerning his competency to stand trial, (3) that no question be asked of him relating to the events surrounding the death of his wife, and (4) that

[6] Borden's letter was also submitted to demonstrate the defendant's compliance with the court's prior order requiring the defendant to report to the court before he was released from the hospital.

any matters of substance elicited from him not be communicated to anyone other than himself or his counsel. The court, *E. Y. O'Connell, J.*, heard argument on the motion on March 29, 1985. At that hearing, the defendant argued that any psychiatric examination pursuant to § 760 was inappropriate because no notice of an intent to rely on a defense of mental disease or defect had been filed under Practice Book § 758. Alternatively, the defendant requested the presence of counsel at the examination or that it be recorded.

The state argued that Borden's earlier testimony, the defendant's hospitalization, and the strength of the state's case indicated that the only foreseeable defenses would be insanity or extreme emotional disturbance and, therefore, this was "an appropriate case" under Practice Book § 760. The state further argued that the defendant's fifth and sixth amendment rights would not be violated if counsel was not present, and that there would be "nothing lost," as the information could not be used if the defendant did not file the defense. The state complained that, if the prior order were rescinded, it "could be forced to be waiting for I don't know how long before the defendant may wish to put the state and the court on notice that he's going to rely on either one or both of those defenses." The court was also told that Zeman would not examine the defendant if defense counsel, a court reporter, or a tape recorder were present.

The court denied the defendant's motion, reasoning that the defendant, and not the state, had introduced the "psychiatric aspect" of the case by presenting the testimony of Borden and the letters from Borden and Greyson such that "fairness, equity and justice required that the state be able to also have an examination in order that it could make certain representations and know where it was going with the case." Relying on federal cases, the court also denied the defendant's

request to have counsel present at the court ordered psychiatric examination and his alternate request for a recording of the examination.[7]

Zeman examined the defendant ten times for a total of seventeen hours. Eight examinations were conducted in April and May, 1985. On April 19, 1985, the state moved for the defendant to comply with the court's March 29, 1985 order requiring him to undergo a psychiatric exam, stating that the examination had begun but had not been completed, and that the defendant refused to comply with the court's order. At a hearing on April 22, 1985, the state informed the court, *E. Y. O'Connell, J.*, that Zeman desired psychological testing done on the defendant in order to have a complete examination with which to meet the defendant's defense of mental disease or defect, "if and when it arises." This motion was granted over the defendant's objection.

Given the court's ruling and the fact that no notice of a defense of mental disease or defect had been filed, the defendant asked the court to order Zeman not to communicate to the state any information obtained during the examinations other than Zeman's diagnosis. The state opposed the defendant's request, claiming that there was a collateral matter then before this court, concerning the defendant's children about which the state and Zeman had, and would continue to have, discussions. The state further argued that it should also be allowed to have discussions with Zeman concerning the release condition of the bond that had been imposed prohibiting the defendant from seeing or communicating with his children.

Reluctant to rule without a written motion, the court denied the defendant's oral motion and noted his excep-

---

[7] See parts III and IV of this opinion for a discussion of the defendant's claims with respect to this aspect of the court's ruling.

tion. The court invited the defendant "to file such a motion as you deem appropriate and attach a suggested order to it." The court stated that, if the state objected to the order, further arguments would be heard. That same day, the defendant filed a motion requesting (1) that Zeman be prohibited from revealing the substance of any conversation with the defendant to the state's attorney, agents thereof, the state police or municipal police of any community, and (2) that any communication between Zeman and the state's attorney's office be limited to Zeman's diagnosis of the defendant's current emotional condition. The record does not indicate the court's disposition of that motion.

The psychological testing ordered by the court to complete Zeman's examinations was conducted on April 29 and May 7, 1985, by psychologist Anne Marie Phillips. The defendant's probable cause hearing commenced on May 17, 1985, forty-nine days after the examinations were ordered. On June 18, 1985, the state filed the information charging the defendant with murder, to which the defendant pleaded not guilty and elected a jury trial. On August 9 and September 18, 1985, the defendant filed identical motions to suppress (1) all of the testimony of Zeman concerning statements made by him about the events immediately before and after March 8, 1985, and (2) any evidence that the state intended to use that was indirectly or directly derived from conversations between Zeman and anyone in the state's attorney's office. On May 6, 1986, the defendant filed notice of his intent to raise the defense of mental disease or defect and extreme emotional disturbance pursuant to Practice Book §§ 758 and 759. Thereafter, he was examined twice more by Zeman on June 10 and 24, 1986, pursuant to an order by the court, *Barall, J.*

On appeal, the defendant claims that the trial court erred in compelling him to submit to a pretrial psy-

chiatric examination under Practice Book § 760 before he filed written notice of his intent to rely on the defenses of insanity and extreme emotional disturbance pursuant to §§ 758 and 759, thereby violating his privilege against self-incrimination under the federal and state constitutions.

"The privilege against self-incrimination embodied in the fifth amendment and made applicable to the states by the fourteenth amendment to the constitution of the United States . . . protects an accused against compulsory submission to psychiatric examination. *Estelle* v. *Smith,* 451 U.S. 454, 468, 101 S. Ct. 1866, 68 L. Ed. 2d 359 (1981). A similar result obtains under article first, § 8, of the constitution of Connecticut." *State* v. *Lovelace,* 191 Conn. 545, 550, 469 A.2d 391 (1983), cert. denied, 465 U.S. 1107, 104 S. Ct. 1613, 80 L. Ed. 2d 142 (1984). This privilege is waived, however, "when [the defendant] places his mental status in issue." *State* v. *Fair,* 197 Conn. 106, 109, 496 A.2d 461 (1985), cert. denied, 475 U.S. 1096, 106 S. Ct. 1494, 89 L. Ed. 2d 895 (1986). Accordingly, the constitutionality of a compulsory psychiatric examination under Practice Book § 760 "depends upon whether the defendant has placed his mental status in issue." Id.

"Any defendant who asserts the defense of extreme emotional disturbance . . . raises the issue of his mental status and hence relinquishes his privilege against submitting to court-ordered psychiatric examination." Id., 111. "[W]hen a defendant raises the defense of insanity, he may constitutionally be subjected to compulsory examination by court-appointed or government psychiatrists . . . and when he introduces into evidence psychiatric testimony to support his insanity defense, testimony of those examining psychiatrists may be received (on that issue) as well." *United States* v. *Byers,* 740 F.2d 1104, 1115 (D.C. Cir. 1984).

The question presented in this case is whether the defendant had placed his mental status in issue by raising the defenses of insanity or extreme emotional disturbance at the time the trial court compelled him, pursuant to its order of March 26, 1985, to submit, over his objection, to a psychiatric examination before he filed written notice of his intent to rely on the defenses of insanity and extreme emotional disturbance pursuant to Practice Book §§ 758 and 759.[8] Our careful review of the record indicates that the defendant had not.

---

[8] Similar claims were raised in *State* v. *Harman,* 198 Conn. 124, 135–36, 502 A.2d 381 (1985); *State* v. *Lovelace,* 191 Conn. 545, 549–55, 469 A.2d 391 (1983), cert. denied, 465 U.S. 1107, 104 S. Ct. 1613, 80 L. Ed. 2d 142 (1984); *State* v. *Smith,* 185 Conn. 63, 79–85, 441 A.2d 84 (1981); but were not addressed. In *State* v. *Smith,* supra, the defendant gave written notice that he might rely on the defense of mental disease or defect and present expert testimony concerning his mental state. He was subsequently compelled to undergo a court ordered examination under Practice Book § 760 over his objection. On appeal, the defendant claimed that the state violated his right against self-incrimination by *using* the information gleaned from the psychiatric reports to change the information originally filed against him. Although the Supreme Court acknowledged that the "case raises difficult questions concerning whether the state has actually compelled the defendant to disclose testimonial communications"; id., 83; they declined to address those questions as they found that the information did not incriminate the defendant, that the disclosed information may have been helpful to the defendant, and that the change in the information had a sufficient independent basis.

In *State* v. *Lovelace,* supra, although the defendant had not yet filed notice that he intended to introduce evidence of his mental state; Practice Book §§ 758, 759; he did not object to the court's initial order compelling him to submit to a psychiatric examination. On appeal, the defendant alleged that the order of the court compelling him to submit to a *second* examination during trial violated his privilege against self-incrimination and his right to due process. The court held that once the defendant raised the issue of his mental state, the question of whether it was "an appropriate case" for an additional examination under Practice Book § 760, and the extent of such examination, was to be determined by the exercise of judicial discretion and the requirements of due process.

In *State* v. *Harman,* supra, the court stated that it did not need to consider the constitutionality of the court ordered examination because the defendant stipulated to the admissibility of the psychiatrist's testimony. The court concluded that, by expressly consenting to the use of the state's

On appeal, the state argues that Borden's testimony at the defendant's bond hearing, the written testimony of Borden and Greyson presented at the hearing on the defendant's motion to modify a condition of his bond, the defendant's stay in a hospital for psychiatric purposes, and the strength of the state's case against the defendant all indicated that the only foreseeable defenses the defendant had available to him were those concerning his mental status at the time the crime was committed.[9] The state therefore argues that the defendant had placed his mental status in issue at the time he was compelled to submit to a series of psychiatric examinations conducted pursuant to the court's order of March 26, 1985. By contrast, the defendant argues that he had not placed his mental status in issue until he filed his written notice of intent to present the defenses of mental disease or defect and extreme emotional disturbance pursuant to Practice Book §§ 758 and 759 on May 6, 1986.

Borden's testimony at the defendant's bond review hearing on March 13, 1985, was introduced by the defendant to assist the trial court in setting the conditions for the defendant's release pending trial. Borden's testimony concerned whether the defendant, if he was released on bail, was likely to flee the jurisdiction or would present a danger to himself or others. Borden also testified that, in his opinion, the defendant should be admitted, on a voluntary basis, to some type of men-

---

psychiatric testimony, "the defendant waived any constitutional claims he may have had with respect to this testimony." Id., 136.

[9] The state also argues that the court file reflects that the defendant was being "evaluated regarding the charges against him" before he had filed his notice under Practice Book §§ 758 and 759. The state points to an August 5, 1985 letter from Borden as evidence that the defendant was being so evaluated. We find this argument unpersuasive because the letter was written after the defendant was ordered by the court to submit to a psychiatric examination on March 26, 1985, and after the examinations were conducted pursuant to that order.

tal hospital. This testimony does not indicate that the defendant had asserted the defenses of insanity or extreme emotional disturbance, thereby placing his mental status in issue at the time he was compelled by the court to submit to a series of psychiatric examinations conducted pursuant to the court's order of March 26, 1985.

The letters from Borden and Greyson, introduced by the defendant on March 26, 1985, were presented to support the defendant's motion to modify the condition of his bond prohibiting him from communicating with or seeing his children. The substance of these letters pertained to that motion. Borden's letter discussed his, and the defendant's, concern for the children and recommended that they be referred to an experienced child psychiatrist and have the benefit of their own counsel to represent their interests. Greyson's letter concerned his professional opinion that the resolution of the defendant's clinical condition would be enhanced if he had the opportunity to meet with his children. Neither of these letters enables us to conclude that the defendant had asserted the defenses of insanity or extreme emotional disturbance, thereby placing his mental status in issue at the time he was compelled to submit to a series of psychiatric examinations conducted pursuant to the court's order of March 26, 1985.

The presentation of psychiatric testimony by a defendant for purposes of setting a condition of his bond, or deciding whether he should be allowed to see or communicate with his children, does not equal a statement by the defendant that he intends to rely on a defense of mental disease or defect, nor does it allow an inference that he will rely on such a defense.

Finally, the state's argument that the defendant was hospitalized for psychiatric purposes, and that the strength of the state's case against the defendant made

it obvious that the only foreseeable defenses available to the defendant were insanity and extreme emotional disturbance, are not determinative of the issue. The psychiatric hospitalization could have related to the defendant's competency to stand trial[10] or his general well-being. Furthermore, as the examination was ordered eighteen days after the crime and more than a year before the defendant filed written notice of his intent to rely on a defense of mental disease or defect pursuant to Practice Book §§ 758 and 759, defenses other than those cited by the state could have been foreseeable.[11] Accordingly, we cannot conclude that the defendant had placed his mental status in issue by asserting the defenses of insanity or extreme emotional disturbance at the time he underwent a series of psychiatric examinations conducted pursuant to the court's order of March 26, 1985, thereby waiving his constitutional privilege against compulsory submission to a psychiatric examination. The constitutional requirement that a defendant must first place his mental status in issue by asserting the defenses of insanity or extreme emotional disturbance before he may be compelled to submit to a psychiatric examination is not a requirement that can rest on prosecutorial speculation.

We conclude that the defendant had not placed his mental status in issue at the time he was compelled to submit to a series of psychiatric examinations by Zeman conducted pursuant to the court's order of March 26, 1985, and, therefore, that this was not an "appropriate case" under Practice Book § 760.[12] It is undisputed

[10] See generally General Statutes § 54-56d.

[11] See generally General Statutes § 53a-16.

[12] This conclusion is not intended to mean that "an appropriate case" under Practice Book § 760 is limited to those cases where the defendant has placed his mental status in issue by asserting the defenses of insanity or extreme emotional disturbance in writing pursuant to the provisions of Practice Book §§ 758 and 759. See State v. Fair, Records & Briefs, p. 6, June Term, 1985 (defense counsel in questioning prospective jurors on voir dire

by the parties, however, that the defendant did place his mental status in issue when he filed written notice with the court on May 6, 1986, that he intended to rely on the defenses of insanity and extreme emotional disturbance pursuant to Practice Book §§ 758 and 759; see *United States* v. *Byers,* supra, 1115; *State* v. *Fair,* supra, 111; and when he presented evidence on his mental status at trial. See *United States* v. *Byers,* supra, 1110; *State* v. *Lovelace,* supra, 551. Accordingly, the defendant waived his constitutional privilege against compulsory submission to psychiatric examination and " 'expose[d] his mental processes to reasonable examination by the state.' " *State* v. *Fair,* supra, 109, quoting *State* v. *Lovelace,* supra, 551–52.

Zeman examined the defendant both before, and after the defendant had placed his mental status in issue by filing his notice under Practice Book §§ 758 and 759. When ruling on the admissibility of Zeman's testimony at trial, the court, *Corrigan, J.,* found that the defendant's case had become "proper . . . so that sometime the court was authorized to compel such an exam," that the two postnotice examinations were not objectionable, and, after an in camera hearing was held with Zeman,[13] that the postnotice examinations did not elicit any information different from the prenotice examinations.

---

articulated his intention to defend the case by a claim of extreme emotional disturbance).

[13] At the in camera hearing, Zeman testified in pertinent part: "Examination by Mr. Daly [defendant's attorney]

"Q: Doctor, what are the last two dates that you saw Dr. Manfredi?

"A: The last two dates that I saw Dr. Manfredi were June 10 and June 24, 1986.

"Q: And previous to that time you had seen him, what, eight times?

"A: That's correct.

"Q: And when was the last of those eight times that you saw him?

"A: The last of the eight times was May 21, 1985.

"Q: Okay. Now, do you have with you any notes that you took while you interviewed Dr. Manfredi?

The defendant argues that, by their "very nature," the prenotice examinations potentially could have provided the state with a windfall of "case-related" information, subject to illicit and derivative use by the state. The defendant fails, however, to point to any specific information or evidence used at trial that he claims the state acquired from the prenotice examinations. Although the defendant claims that the state's attor-

"A: Yes, I do.

"Q: May I see those that are applicable to 1986 dates. Perhaps you could find those for me.

"A: All right. These two.

"Q: Thank you. Are there somewhere in those notes references to any conversations you had with Dr. Manfredi having to do with what Dr. Manfredi told you during the earlier eight visits?

"A: I believe so. Let me look through them.

"Q: Sure, would you?

"A: Let me just look at this. This section.

"Mr. Daly: May I have just a minute, your Honor?

"The Court: You may.

"Q: Doctor, by any chance, these notes were never typed up by anybody?

"A: They were not.

"Q: Do me a favor, would you, read this to me?

"A: Yes. This was from my interview of June 10, 1986. I asked the patient, Dr. Manfredi—

"Q: Excuse me. Are you reading exactly what is on there or are you reading what you recall?

"A. I am reading what is on there.

"Q. Okay.

"A. I asked the patient, in other words, Dr. Manfredi, whether the factual account he gave me a year ago concerning the events leading up to his wife's death and the actual manner of her death were at this time—In other words, at the time I was doing this interview, accurate from his point of view. In other words, i.e., whether he had any significant or substantial changes which he felt needed to be made now in his past account of these events. He assured that—He assured me that his recollection of the events was the same now as it was a year ago.

"Q. Okay. Let me take that, if I may, for just a minute. I am taking another piece of paper and that is for the second June visit in '86, right?

"A: That's correct, June 24.

"Q. And am I correct in assuming that in the other papers that you have in front of you are notes that you took on each of eight other times that you saw Dr. Manfredi back in 1985.

"A: That's correct."

ney received information from the prenotice examinations by Zeman "beyond his diagnosis," the defendant does not state, nor does the record reflect, what that information was. The defendant also does not refute the state's contention that any information acquired from Zeman's prenotice examinations concerned collateral matters. The record before us does not demonstrate that the state acquired a windfall of substantive information from Zeman's prenotice examinations of the defendant. "It is incumbent upon an appellant to ensure that we are provided with an adequate record to review the claims of error." *State* v. *Tyler-Barcomb,* 197 Conn. 666, 676, 500 A.2d 1324 (1985), cert. denied, 475 U.S. 1109, 106 S. Ct. 1518, 89 L. Ed. 2d 916 (1986).

The defendant further argues that Zeman's testimony was improperly used during the cross-examination of the defendant. The state may use information obtained through such disclosures and examinations only for the cross-examination or rebuttal of defense testimony. Practice Book § 772.[14] Furthermore, "in any criminal proceeding, Practice Book § 760 bars from admission into evidence on the issue of guilt statements made by the defendant in the course of any examination related to a defense of mental disease or defect." *State* v. *Smith,* 185 Conn. 63, 82–83, 441 A.2d 84 (1981). The transcript of the cross-examination indicates that the defendant did not object to any specific question posed by the state on the ground that the state was using the psychiatric examination improperly. See Practice Book §§ 760, 772. On appeal, the defendant neither indicates how Zeman's testimony was used improperly nor refutes the state's contention that the testimony was used properly under Practice Book § 772 to cross-examine the defendant.

[14] Practice Book § 772 provides in pertinent part: "Information obtained by the prosecuting authority pursuant to Sec. 756 shall be used only for the cross-examination or rebuttal of defense testimony."

Finally, once the defendant placed his mental status in issue by giving notice of his intent to raise the defenses of insanity and extreme emotional disturbance, and once he had presented testimony on that issue at trial, it was constitutionally permissible to subject him to a compulsory psychiatric examination and admit rebuttal evidence on that issue. *United States* v. *Byers,* supra, 1115. It is impossible to distinguish between the unconstitutional testimony that was obtained from the defendant by Zeman pursuant to the court's order of March 26, 1985, and the constitutional testimony obtained from the defendant after he had placed his mental status in issue. The trial court found no substantive difference, nor does the record of Zeman's testimony demonstrate any. " '[T]he focus of appellate inquiry should be on the character and quality of the tainted evidence as it relates to the untainted evidence.' *Harrington* v. *California,* 395 U.S. 250, 256, 89 S. Ct. 1726, 23 L. Ed. 2d 284 (1969) (Brennan, J., dissenting)"; *State* v. *Gordon,* 185 Conn. 402, 420–21, 441 A.2d 119 (1981), cert. denied, 455 U.S. 989, 102 S. Ct. 1612, 71 L. Ed. 2d 848 (1982). Given this focus, we are unable to conclude that the trial court's finding that the information elicited by the two examination periods was substantially the same was clearly erroneous.

In light of the court's ruling that the postnotice examinations were not impermissibly tainted by the prenotice examinations, and with no evidence in the record that the two examination periods elicited different information, that they were used by the state to acquire a windfall of substantive information, or used improperly by the state, we are unable to conclude that the defendant has suffered any prejudice from the admission of Zeman's testimony. In these distinct circumstances, we cannot conclude that the defendant has been denied a fair trial. See *State* v. *Lovelace,* supra, 552–55.

## II

Relying on Practice Book §§ 760 and 772, the defendant claims that the trial court erred in charging the jury that it could use defense and prosecution psychiatric expert testimony to determine whether the state had proved that the defendant had the requisite intent to commit murder, thereby violating his federal and state constitutional privileges against self-incrimination and his right to a fair trial.

Because the defendant did not except to the charge as given, he seeks review under *State* v. *Evans*, 165 Conn. 61, 327 A.2d 576 (1973), and under the plain error doctrine. We have recently clarified our formulation for an *Evans* review.

" 'We "must ask a series of questions when an *Evans* claim is made and answer each in the affirmative before continuing to the succeeding question." *State* v. *Newton*, 8 Conn. App. 528, 531, 513 A.2d 1261 (1986). "The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review." Id.

'First, does the defendant raise an issue which, by its terms, implicates a fundamental constitutional right? This question looks solely to whether the label which the defendant places on the claim is constitutional in nature.

'Second, is the defendant's constitutional claim adequately supported by the record? This question requires that we review the record in a *limited* way and determine, on the basis of that limited review, whether the defendant's claim is truly of constitutional proportions or is simply characterized as such by the defendant. In those instances in which the Supreme Court or this court has already clearly indicated that the particular

claim is or is not of constitutional proportions and therefore reviewable or not reviewable, a summary "yes" or "no" answer may be sufficient.

'Third, "was there, in fact, based on the record, a deprivation of a constitutional right of a criminal defendant?" *State* v. *Newton,* supra. This question requires that we *fully* review the defendant's claim to determine whether a fundamental constitutional right of his was violated.

'Fourth, "did the deprivation deny the defendant a fair trial, thereby requiring" that his conviction be set aside. Id. This question requires that we determine, under appropriate standards of harmless error or other similar doctrines, whether the error requires reversal." ' (Emphasis in original.) *State* v. *Thurman,* 10 Conn. App. 302, 306–307, 523 A.2d 891 (1987)." *State* v. *Huff,* 10 Conn. App. 330, 333–34, 523 A.2d 906, cert. denied, 203 Conn. 809, 525 A.2d 523 (1987); see also *State* v. *Bailey,* 209 Conn. 322, 329–30 n.4, 551 A.2d 1206 (1988); *State* v. *Smith,* 209 Conn. 423, 425–27, 551 A.2d 742 (1988).

The defendant, by claiming that the trial court's charge to the jury amounted to a violation of his constitutional privilege not to incriminate himself and his right to due process, has satisfied the first requirement for *Evans* review. See *State* v. *Huff,* supra, 334–35. Our limited review of the record discloses, however, that the defendant's claim is not truly of constitutional proportions, but is simply characterized as such by him.

The defendant's claim that the jury's consideration of testimony by state expert psychiatric witnesses in its determination of whether the state had met its burden of demonstrating that the defendant had the requisite intent to kill violated Practice Book §§ 772 and 760, and his privilege against self-incrimination, is without merit. As evidenced by part I of this opinion, the

defendant waived any fifth amendment claim he may have had with respect to such testimony by placing his mental status in issue. Moreover, once the defendant placed his mental status in issue and presented testimony on that issue at trial, the state could have used information obtained through such disclosures and examinations for the cross-examination or rebuttal of such defense testimony. Practice Book § 772. Practice Book § 760 bars from admission into evidence on the issue of guilt, statements made by the defendant in the course of any examination related to a defense of mental disease or defect. *State* v. *Smith,* supra, 82–83. The rules of practice cited by the defendant, however, do not prohibit, or even apply to, a trial court's charge to the jury on their use of the evidence presented at trial. In fact, inapposite to the defendant's position, "evidence with regard to mental capacity is relevant in any case where a specific intent is an essential element of the crime charged." *State* v. *Burge,* 195 Conn. 232, 240, 487 A.2d 532 (1985); see also General Statutes § 53a-54a (b).[15]

The defendant also argues that the trial court's charge enabled the jury to consider his own evidence presented by Borden on the issue of intent, thereby

[15] General Statutes § 53a-54a provides in pertinent part: "(a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime.

"(b) Evidence that the defendant suffered from a mental disease, mental defect or other mental abnormality is admissible, in a prosecution under subsection (a), on the question of whether the defendant acted with intent to cause the death of another person."

violating his constitutional privilege against self-incrimination and right to due process. We disagree. Once the defendant placed his mental status in issue, "the defendant raised the issue of his mental state for all purposes; thereafter he [can] not . . . determine the ground rules for the determination of his claim." *State* v. *Lovelace,* supra, 551.

"Where counsel . . . seeks to raise on appeal a potential defect in the jury charge which he did not raise at trial, his silence at trial is a powerful signal that, because of the posture of the case, he did not hear the defect in the harmful manner which he presses on appeal, or even if he did so hear it, he did not deem it harmful enough to press in the trial court.[16] When the principal participant in the trial whose function it is to protect the rights of his client does not deem an issue harmful enough to press in the trial court, the appellate claim that the same issue clearly deprived the defendant of a fundamental constitutional right and a fair trial; *State* v. *Cosby,* [6 Conn. App. 164, 172, 504 A.2d 1071 (1986)]; is seriously undercut. See also *State* v. *Kurvin,* 186 Conn. 555, 567, 442 A.2d 1327 (1982) ('We cannot ignore the fact that the defendant saw no reason to take exception to an instruction which he now claims is misleading')." (Footnote added.) *State* v. *Huff,* supra, 338. Under the circumstances of this case, therefore, we decline to review the defendant's claim further under *Evans.*

The defendant also argues that his claim is reviewable under the plain error doctrine. There is, however,

---

[16] "We recognize that the silence may also simply reflect inadvertence by counsel. That possibility is not enough to warrant appellate review. The policies behind the rule requiring claims to be raised at trial are strong and sound. See *State* v. *Cosby,* 6 Conn. App. 164, 173, 504 A.2d 1071 (1986). Furthermore, due process requires a fair trial, not a perfect one. *State* v. *Kurvin,* 186 Conn. 555, 565, 442 A.2d 1327 (1982)." *State* v. *Huff,* 10 Conn. App. 330, 338, 523 A.2d 906, cert. denied, 203 Conn. 809, 525 A.2d 523 (1987).

no plain error in this case. The jury instructions did not create a manifest injustice to the defendant so as to impair the effectiveness and integrity of the trial. *State* v. *Utz,* 201 Conn. 190, 202, 513 A.2d 1191 (1986); *State* v. *Huff,* supra, 339. The instructions neither vitiated the fundamental integrity of the adjudicative process nor worked a fundamental injustice. *State* v. *Huff,* supra; *State* v. *Cosby,* supra, 172.

## III

The defendant next claims that his right to assistance of counsel under the state[17] and federal constitution was violated when the trial court denied his motion to have counsel present at the court ordered psychiatric examinations. Our recent decision in *State* v. *Johnson,* 14 Conn. App. 586, 588–95, 543 A.2d 740 (1988), held that a defendant does not have a sixth amendment right to the presence of counsel at a psychiatric interview.

Although a defendant may have a sixth amendment right to assistance of counsel *"before* submitting to the pretrial psychiatric interview"; (emphasis added); *Estelle* v. *Smith,* supra, 469; *United States* v. *Byers,* supra, 1119; *State* v. *Johnson,* supra, 589–90; "[t]he [Supreme] Court [has] specifically disavowed any implication of a 'constitutional right to have counsel actually present *during* the examination. . . . ' [*Estelle* v. *Smith,* supra,] 470 n.14." (Emphasis added.) *United States* v. *Byers,* supra; see id., n.14.

"Even if counsel were uncharacteristically to sit silent and interpose no procedural objections or suggestions, one can scarcely imagine a successful psy-

---

[17] Although the defendant refers to both the federal and state constitutions, he offers no separate analysis of the Connecticut constitution as a basis for different treatment of the federal and state claims. We therefore see no reason to undertake such an analysis. *State* v. *Bowden,* 15 Conn. App. 539, 543 n.2, 545 A.2d 591 (1988); *State* v. *Cosby,* 6 Conn. App. 164, 166 n.1, 504 A.2d 1071 (1986).

chiatric examination in which the subject's eyes move back and forth between the doctor and his attorney. Nor would it help if the attorney were listening from outside the room, for the subject's attention would still wander where his eyes could not. And the attorney's presence in such a purely observational capacity, without ability to advise, suggest or object, would have no relationship to the sixth amendment's [guarantee to the assistance of counsel]." Id., 1120; *State* v. *Johnson,* supra, 591. Relying on *Estelle, Byers* and *Johnson,* we conclude that the defendant did not have a sixth amendment right to the presence of counsel at the court ordered psychiatric examination.

## IV

The defendant's final claim is that his state[18] and federal constitutional right to assistance of counsel were likewise violated when the trial court denied his request to have the psychiatric examinations recorded in the absence of his counsel's actual presence. Specifically, the defendant argues that the recording of a psychiatric examination is constitutionally mandated in order for counsel effectively to preserve and assert the defendant's rights both before and during trial.

"Whatever the feasibility of such a practice, [there is] no basis for it in the Sixth Amendment. Its only utility would be to record events . . . that are otherwise difficult to reconstruct. But as [*United States* v. ] *Ash,* [413 U.S. 300, 93 S. Ct. 2568, 37 L. Ed. 2d 619 (1973)] made completely clear, 'lack of scientific precision and inability to reconstruct an event are not the tests' for application of the Sixth Amendment guarantee. [(Footnote omitted.) *United States* v. *Ash,* supra,] 316. They are not the tests because preservation of evidence for trial is not the Amendment's purpose . . . . Using

---

[18] See footnote 17, supra.

the guarantee of counsel for the purpose of preserving evidence would make '[a] substantial departure from the historical test,' and convert the Sixth Amendment into 'a generalized protection of the adversary process.' [Id.], 317. . . . [T]he suggestion of recording as a substitute for assistance of counsel . . . makes the consideration of one constitutional guarantee the occasion for creation of limitations that serve an entirely unrelated constitutional purpose." (Citations omitted.) *United States* v. *Byers,* supra, 1120–21.

The constitutional rights of a criminal defendant under the sixth amendment and the due process clause are secured if "the defendant has the opportunity to contest the accuracy of witnesses' testimony by cross-examining them at trial, and introducing his own witness in rebuttal." Id., 1121; *State* v. *Johnson,* supra, 592–93. The defendant does not claim that he was denied the opportunity to cross-examine the state's expert psychiatric witnesses and to introduce his own rebuttal witnesses. We find the reasoning of *Byers* persuasive, and conclude that the sixth amendment guarantee to assistance of counsel does not require a court compelled psychiatric examination to be recorded.

There is no error.

In this opinion the other judges concurred.